# UNITED STATES et al. v. MISSOURI PACIFIC RAILROAD COMPANY.

No. 19.  Argued March 5, 6, 1928.  Reargued April 24, and November 19, 20, 1928.—Decided January 2, 1929.

*Mr. Blackburn Esterline,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. Daniel W. Knowlton,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

272

Mr. *James B. McDonough* for the Ft. Smith, Subiaco & Rock Island Railroad Company.

Mr. *H. H. Larimore,* with whom *Messrs. Edw. J. White* and *Thos. B. Pryor* were on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

On complaint of the Fort Smith, Subiaco and Rock Island Railroad Company, called the "Subiaco," against the Missouri Pacific Railroad Company and 353 other carriers by rail, the Interstate Commerce Commission made an order establishing through routes for westbound freight traffic over the Subiaco. The Missouri Pacific brought this suit against the United States to set aside the order. U. S. C., Tit. 28, §§ 46, 48. The Interstate Commerce Commission and the Subiaco intervened. § 212, Judicial Code. The District Court, composed of three judges, (U. S. C., Tit. 28, § 47) held that the Commission was without power to establish the routes and entered its decree granting the relief prayed. The United States and the intervenors join in this appeal. § 47, *supra.*

The sole question is whether the Commission is authorized by the Interstate Commerce Act to establish the routes complained of.

Paragraph (3) of § 15 provides: "The Commission may, and it shall, whenever deemed by it to be necessary or desirable in the public interest . . . establish through routes . . . applicable to the transportation of . . . property . . ." Paragraph (4) of that section provides: "In

·establishing any such through route the Commission shall not (except as provided in section 3, and except where one of the carriers is a water line), require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad . . . which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established. . . ." U. S. C., Tit. 49.

The entire line of the Subiaco is in Arkansas. It is 40 miles long and extends from Paris, where it connects with a branch line of the Missouri Pacific, easterly to Dardanelle, where it meets a branch of the Chicago, Rock Island and Pacific Railway Company, extending southerly 14 miles to junction with the east and west main line of that company at Ola. The Subiaco has not been able to earn dividends, and has long sought to increase earnings by having its line made a part of through routes for interstate traffic not beginning or ending thereon.

In a proceeding initiated by the Subiaco against the Arkansas Central, whose line later became the Paris branch of the Missouri Pacific, the Commission, February 12, 1924, declared that such routes would be in the public interest, but dismissed the case for lack of proper parties defendant. 87 I. C. C. 617. The Subiaco filed a new complaint that alleged need of more revenue to enable the company to continue operations and prayed for the establishment of through westbound routes via Little Rock, Ola, Dardanelle and Paris. The Commission, Division 4, October 23, 1925, found that the company was earning a surplus over operating expenses and taxes and that on the showing there was no ground for abandonment of the line. The report shows that traffic to move over the proposed route must come from other carriers; that the Missouri Pacific, then probably not earning a fair

return, would be the principal loser, and that revenue diverted from it would largely exceed the amount that would go to the Subiaco. The Division reversed the earlier finding and dismissed the complaint. 102 I. C. C. 708. The case was reopened and upon further consideration the Commission, March 2, 1926, one of its members dissenting and two others not participating, found the proposed route desirable in the public interest, and made the order here in controversy. 107 I. C. C. 523.

It directs defendants to establish and maintain through routes westbound over the Subiaco via Ola, Dardanelle and Paris between points of origin and destination named in certain tariffs, which include places between which lie certain lines of the Missouri Pacific. The order contains a proviso: " That this order shall not be construed as requiring any defendant to participate in any through route . . . which would require it to surrender possession of traffic which it has originated or received from a connecting carrier to another carrier for transportation over a route which embraces less than the entire length of such defendant's railroad . . . which lies between the termini of such route."

The Missouri Pacific has a main line that extends from Little Rock to Fort Smith and points west. It also has lines connecting Little Rock with Mississippi River crossings at East Saint Louis, Saint Louis, Cairo, Memphis, Natchez and New Orleans. Thus, that company provides routes for traffic originating at these places and also a link in through routes for traffic originating east of the Mississippi on other lines and moving through these gateways to Fort Smith, points on the Paris branch, or points on or reached by its line extending west from Fort Smith. In each of the existing routes, the Missouri Pacific has the haul from the Mississippi to Fort Smith and points on its lines extending through that place.

There is no finding that any of these routes is too long or that the traffic covered by the order would be handled more advantageously over the proposed route. The situation in respect of all may be illustrated by the route from or via Memphis to Fort Smith and beyond. Memphis is on the east bank of the Mississippi, about due east from Little Rock, which is at the geographical center of Arkansas. Fort Smith is near and some distance north of the middle of the west boundary of the State. The order would compel the Missouri Pacific to use its Paris branch to establish a route to compete with those in which it has much longer hauls. The new route would give it a haul not more than the length of the Paris branch as against those over its lines from its Mississippi gateways to or beyond Fort Smith. Its haul from Memphis to Fort Smith is 308 miles.

The main line of the Rock Island extends from Memphis to Little Rock, thence a little south of west via Ola to points west of Arkansas. Its rails do not extend to Fort Smith, but its traffic reaches that place via Mansfield and also via Wister over the lines of the Saint Louis-San Francisco Railway and also via Howe over the Kansas City Southern Railway. There is no suggestion that the proposed through route is the only one available to shippers or that without it they would be limited to lines of the Missouri Pacific for transportation from Memphis or from its other Mississippi gateways to Fort Smith. Under the order complained of, the Rock Island would haul 222.3 miles from Memphis to Dardanelle, the Subiaco 40.3 miles from Dardanelle to Paris, and the Missouri Pacific 46.1 miles from Paris to Fort Smith. Thus the route ordered gives the Missouri Pacific a haul of only 46 miles, while the existing route gives it 308.

The Act does not give the Commission authority to establish all the through routes it may deem necessary or desirable in the public interest. The general language

of paragraph (3) is limited by paragraph (4). The latter lays down the rule that, subject to specified· exceptions, a carrier may not be compelled to participate in a through route which does not include substantially its entire line lying between the termini of the route. The purpose is to protect the long haul routes of carriers. It is clear that, within the meaning of paragraph (4), the mileage of the Missouri Pacific between its Mississippi River crossings and Fort Smith lies between the termini of all routes through or from such gateways westbound over the line of the Subiaco. The existing routes include these Missouri Pacific lines and give that company long hauls as compared with the length of the Paris branch. The latter is the only line of the company included in the Subiaco route. The order is plainly repugnant to the rule prescribed by that paragraph. And, as neither· § 3 nor water transportation is involved and existing routes were not found unreasonably long, the proposed route is not within the exceptions specified in that paragraph.

The appellants oppose the application of paragraph (4) according to its terms and ·insist that it should not' be construed to cover all routes which short haul· the carrier, but only those which deprive the carrier of its long haul after it has obtained possession of the traffic. The proviso contained in the order, reflecting that view, falls far short of protecting the carrier's long haul routes as contemplated by paragraph (4). The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. It is elementary that where no ambiguity exists there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written must be relieved

by legislation. It is for Congress to determine whether the Commission should have more authority in respect of the establishment of through routes. Construction may not be substituted for legislation. *United States* v. *Wiltberger,* 5 Wheat, 76, 95-96. *United States* v. *Fisher,* 2 Cranch 358, 386. *Lake County* v. *Rollins,* 130 U. S. 662, 670. *Caminetti* v. *United States,* 242 U. S. 470. *Ex parte Public National Bank, ante,* p. 101. *United States* v. *Colorado & N. W. R. Co.,* 157 Fed. 321, 327.

Appellants seek to support the view for which they contend by some of the legislative history of the enactment and especially by explanatory statements made by Senator Elkins in connection with the report of the majority of the Senate committee submitting the bill for the Act in question. Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed. *United States* v. *Freight Ass'n,* 166 U. S. 290, 325. *Pennsylvania R. R.* v. *International Coal Co.,* 230 U. S. 184, 199. *Mackenzie* v. *Hare,* 239 U. S. 299, 308. *Caminetti* v. *United States, supra,* 490.

But the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used. *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 19, 21. *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320, 333. *Northern Pacific Ry.* v. *Washington,* 222 U. S. 370, 380. *Mc-*

*Lean* v. *United States*, 226 U. S. 374, 381. Appellants' construction is not supported by the legislative history, reference to which is printed in the margin,* but, all essential parts considered, it strengthens the conclusion that the words used express the purpose intended to be given effect.

And appellants assert that the Commission in a long line of decisions has held, that the rule declared in paragraph (4) applies only to traffic in possession of the carriers, and they argue that this construction was impliedly sanctioned by the inclusion of the provision without alter-ation in Transportation Act, 1920. But the rule that re-

---

* See:

Sec. 4, Act of June 29, 1906, 34 Stat 589, in force until the enactment of paragraph (4) of § 15 here involved.

*Northern Pacific Ry.* v. *Interstate Commerce Commission*, decided in U. S. Circuit Court for Minnesota, June 5, 1909, affirmed in this Court, March 7, 1910. 216 U. S. 538.

Report of Interstate Commerce Commission, Dec. 21, 1909, House Documents, Vol. 111, No. 148, pp. 7, 38.

President's Special Message, Jan. 7, 1910. Messages and Papers of the Presidents, Vol. X, pp. 7821, 7826.

Statement in behalf of Interstate Commerce Commission by its Chairman, Honorable Martin A. Knapp. Hearing on S. 3776 and 5106, 61st Congress, 2nd Session, p. 205, found in: Hearings before Senate Committee on Interstate Commerce, 1906–12, vol. 15, Various Subjects. Also his statement before Committee on Interstate and Foreign Commerce, House of Representatives, printed in Hearings on Bills affecting Interstate Commerce, part 20, 1910, pp. 1174, 1178.

Statement of Senator Elkins above referred to. Congressional. Record, 61st Congress, 2nd Session, pp. 3475 and 3476.

In connection with the re-enactment of § 15 (4) in Transportation Act, 1920, see:

Statement of Mr. Ben B. Cain, Vice President, American Short Line Association, before House of Representatives' Committee on Interstate and Foreign Commerce. Hearings, 1919–1920, " Return of Railroads to Private Ownership." Vol. 232–3, pp. 1860, 1880. Also statement of Honorable Edgar E. Clark, member of the Interstate Commerce Commission, pp. 2857, 2868, *et seq.*

enactment of a statute after it has been construed by officers charged with its enforcement impliedly adopts the construction applies only when the construction is not plainly erroneous and to cases presenting the precise conditions passed on prior to the re-enactment. *New Haven R. R.* v. *Interstate Commerce Comm'n,* 200 U. S. 361, 401. The rule has no application in this case because, the decisions by the Commission do not show that it had given paragraph (4) the limited effect claimed by appellants; the order here involved conflicts with that provision; and, if any prior decision of the Commission held that the Act empowered it to establish a through route substantially like the one under consideration, that construction was plainly erroneous and did not attach to or become a part of the provision re-enacted.

Appellants also claim that decisions by the Commission before and since the re-enactment established a settled interpretation which should be given controlling weight in support of the order in question. It has been held in many cases that a definitely settled administrative construction is entitled to the highest respect; and, if acted on for a number of years, such construction will not be disturbed except for cogent reasons. See e. g. *Logan* v. *Davis,* 233 U. S. 613, 627. But the court is not bound by a construction so established. *Chicago &c. Ry. Co.* v. *Mc-Caull-Dinsmore Co.,* 253 U. S. 97, 99. *United States* v. *Dickson,* 15 Pet. 141, 161. The rule does not apply in cases where the construction is not doubtful. And if such interpretation has not been uniform, it is not entitled to such respect or weight, but will be taken into account only to the extent that it is supported by valid reasons. *Brown* v. *United States,* 113 U. S. 568, 571. *Merritt* v. *Cameron,* 137 U. S. 542, 551–552. *United States* v. *Alabama Railroad Co.,* 142 U. S. 615, 621. *United States* v. *Healey,* 160 U. S. 136, 145. *Studebaker* v. *Perry,* 184 U. S. 258, 268. *Houghton* v. *Payne,* 194 U. S. 88, 99.

Moreover, after careful consideration of the Commission's decisions, aided by elaborate arguments of counsel, we are unable to find that there has been established any settled interpretation of paragraph (4) in respect of the question presented here. Most of the cases cited differ widely from this one. Some decisions oppose the construction for which appellants contend. *C. & C. Traction Co.* v. *B. & O. S. W. R. R. Co.*, 20 I. C. C. 486. *Investigation of Alleged Unreasonable Rates on Meats*, 23 I. C. C. 656. *Chamber of Commerce* v. *N. Y. C. & H. R. Co.*, 24 I. C. C. 55. *Hayden Bros. Corp'n* v. *D. & S. L. R. R.*, 39 I. C. C. 94, 104. This case before Division 4, 102 I. C. C. 708. *Wilgus* v. *P. R. R. Co.*, 113 I. C. C. 617. Many deal only with the right of the original or initiating carrier to have its long haul of traffic in possession and in through routes in which its line is included, and give no support to the contention that intermediate and delivering carriers are not within the protection of paragraph (4). Appellants rely on *Waverly Oil Works Co.* v. *P. R. R. Co.*, 28 I. C. C. 621, and consider it the leading case and foundation of the line of decisions on which they rely. In that case, there was complaint against charges exacted for switching to and from industries on the Pennsylvania Railroad in Pittsburgh when the shipper desired to move its traffic from that place over other lines. The Commission did not fix such charges, but held that it had power to establish joint rates from any point on such terminals, where traffic was received by the Pennsylvania, to a point on any connecting line and vice versa. In the course of its report, the Commission illustrated the practical application of the statute where a through route is made up of two overlapping lines. It is manifest that, without back hauling, each could not have its long haul. And that was shown by a diagram in the report. P. 630. The Commission held that in such circumstances the carrier that initiates and has possession of the traffic is entitled

to its long haul and, by way of example, pointed out that the Pennsylvania would have the long haul on traffic originating on its terminals in Pittsburgh destined to a point on the Baltimore & Ohio terminals in Baltimore, and that the latter would have the long haul on traffic originating on its terminals at Baltimore and destined to a point on the Pennsylvania terminals at Pittsburgh. Plainly, that case is not similar to this. The construction for which appellants contend is indicated in these cases. First case in this controversy, 87 I. C. C. 617. *Flory Milling Co.* v. *C. N. E. Ry. Co.,* 93 I. C. C. 129. This case, 107 I. C. C. 523. *Port of New York Authority* v. *A. T. & S. F. Ry. Co.,* 144 I. C. C. 514. *Stickell & Sons* v. *W. M. Ry. Co.,* 146 I. C. C. 609.

Analysis of the decisions in detail is not necessary and would not be justified. It is enough to say that they have not been uniform and do not establish any settled interpretation that is applicable here. The construction of paragraph (4) in this case is free from doubt.

*Decree affirmed.*