## DISTRICT OF COLUMBIA v. NEWMAN.

Court of Appeals of District of Columbia. Argued January 7, 1929. Reargued February 4, 1929. Decided February 25, 1929.

Motion for Second Rehearing Denied December 2, 1929.

No. 4803.

W. W. Bride and F. H. Stephens, both of Washington, D. C., for plaintiff in error.

Paul E. Lesh, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is a writ of error to the municipal court of the District of Columbia to review a judgment in that court for the defendant in error for balance of salary alleged to be due her as teacher in the public schools of the District of Columbia.

The solution of the question presented is dependent upon the interpretation of the Act of June 4, 1924 (43 Stat. 367), which declares:

"That on and after July 1, 1924, the salaries of teachers, school officers, and other employees of the Board of Education of the District of Columbia shall be as follows:

"Article I.—*Salaries of Teachers and School Librarians.*

"Class 1.—Teachers in Kindergartens and Elementary Schools.

"Group A.—A basic salary of $1,400 per year, with an annual increase in salary of $100 for eight years, or until a maximum salary of $2,200 per year is reached.

"Group B.—A basic salary of $2,300 per year, with an annual increase in salary of $100 for three years, or until a maximum salary of $2,600 per year is reached.

"Class 2.—Teachers in Junior High Schools.

\* \* \* \* \* \*

"Class 3.—Teachers in Senior High and Normal Schools.

\* \* \* \* \* \*

"Class 4.—School Librarians.

\* \* \* \* \* \*

"Article II.—*Salaries of Administrative and Supervisory Officers.*

\* \* \* \* \*

"Article III.—*Classification and Assignment of Employees.*

"Sec. 2. That the Board of Education is hereby authorized, empowered, and directed, \* \* \* to classify and assign all teachers, school officers, and other employees to the salary classes and positions in the foregoing salary schedule. \* \* \*

"Sec. 3. That the Board of Education \* \* \* is authorized, empowered, and directed to assign, at the time of appointment, teachers, school officers, or other employees hereafter appointed to the salary classes and positions in the foregoing salary schedule in accordance with previous experience, eligibility qualifications possessed, and the character of the duties to be performed by such persons. \* \* \* "

In article IV, sections 4, 5, 6, 7, 8, 9, and 10 of the act cover the method of assignment of employees to salaries. Section 4 provides:

"That for the fiscal year ending June 30, 1925, every teacher, school officer, or other employee in the service of the Board of Education on permanent tenure on June 30, 1924, shall receive the salary provided in the foregoing schedule for his class or position in accordance with the following rules:

\* \* \* \* \* \*

"Provided further, That teachers and other employees assigned to classes 1, 2, 3, and 4 in the foregoing schedule shall be entitled to longevity placement as provided in section 6."

Section 6, par. (q), reads in part as follows:

"That all teachers, school officers, or other employees hereafter appointed, shall be placed in the salary classes and positions in the foregoing schedule by the said board, and all teachers and other employees assigned to classes 1, 2, 3, and 4 of the foregoing schedule in the service of the said board on July 1, 1924, or thereafter appointed shall receive their longevity increase according to their previous number of years of experience in teaching in like positions in accredited schools

to those which they hold on July 1, 1924, or to which they may thereafter be appointed: Provided further, That in crediting experience in teaching of any person who has been absent from his duties as a teacher because of military service the said board is hereby authorized to include naval, military, or other service with the armed forces of the United States Government or its allies as the equivalent of teaching experience: Provided further, That no teacher or other employee shall be placed in the salary schedule for more than the fourth year of experience in classes 1, 2, Group A, or 4, or more than the fifth year of experience in class 2, Group C, or class 3."

Defendant in error, Miss Newman, was first appointed a teacher in the public schools of the District on February 1, 1913, continued therein, and was on permanent tenure June 30, 1924. Her "present compensation" (that is, for the year ending June 30, 1924), was $1,680, computed under the law then in force. Of this sum $1,200 was basic salary, $240 longevity (eight years at $30 per year), and $240 bonus. Under the new law she was assigned to group A, class 1.

The District, in supposed compliance with the provisions of section 4, par. (c), that "all other teachers and school librarians assigned to Group A of the salary classes in the foregoing schedule shall receive the salary in the classes to which assigned which is next above their present compensations and in addition shall receive one annual increase of salary of $100 as provided in the foregoing schedule," added $20 to Miss Newman's "present compensation," and to that sum added one annual increase of $100, making $1,800, which she was paid. The item of $100 represents the earned increase resulting from service during the first year under the new law; that is, for the year ending June 30, 1925.

Defendant in error contends that she was entitled to $300 additional. This contention is based upon her interpretation of the provision in section 6, par. (q), that "all teachers and other employees assigned to classes 1, 2, 3, and 4 of the foregoing schedule in the service of the said board on July 1, 1924, or thereafter appointed shall receive their longevity increase according to their previous number of years of experience in teaching in like positions in accredited schools to those which they hold on July 1, 1924, or to which they may thereafter be appointed: \* \* \* Provided further, That no teacher or other employee shall be placed in the salary schedule for more than the fourth year of experience in classes 1, 2, Group A, or 4, or more

446

than the fifth year of experience in class 2, Group C, or class 3." She insists that, having had eight years' experience in teaching in the public schools of the District, she was entitled under this paragraph to four longevity increases of $100, instead of the earned increase of $100 allowed her by the District.

Prior to the Act of May 26, 1908 (35 Stat. 289), teachers brought into the service from other jurisdictions received no "longevity placement"; that is, they received no credit for their previous experience in other jurisdictions. That act provided "that teachers hereafter employed in normal, high, and manual training schools, may be placed in Group A, class six, and receive their longevity increase according to their number of years of experience in teaching in accredited normal, high or manual training schools." It will be observed that this provision embraced *only* teachers in the normal, high, and manual training schools.

Such was the law at the time of the passage of the act of 1924, here under review, and in our opinion it was the intent of Congress, in paragraph (q) of section 6 of this act to correct the apparent unjust discrimination against teachers other than those in normal, high, or manual training schools. This act must be viewed as a whole, and an interpretation given its provisions that will, if possible, carry out the legislative intent. No section or paragraph may be wrested from its context, but must be considered in the light of the general scope and purpose of the entire act.

In the first place, section 4 in terms provides that every teacher, school officer, or other employee in the service on June 30, 1924, "shall receive the salary provided in the foregoing schedule for his class or position," in accordance with prescribed rules. The rule applicable to the class to which Miss Newman belongs (class 1, group A) directs that teachers of that class "shall receive the salary in the classes to which assigned which is next above their present compensations and in addition shall receive one annual increase of salary of $100 as provided in the foregoing schedule." This rule has been literally complied with.

Miss Newman's "present compensation" was $1,680, made up of the basic salary of $1,200, $240 earned longevity, and $240 bonus. Under the provisions of paragraph (d) of section 4 it is provided that this "present compensation * * * shall be construed to include basic salary, *longevity allowance,* * * * and increase of compensation (bo-

nus)." (Italics ours.) It is evident that this longevity allowance covered her entire period of service up to the taking effect of the new law, but she insists that she is entitled to more, because of the provision in paragraph (q) of section 6, to which we have already referred. That provision, in our view, is not reasonably susceptible of the interpretation attempted to be placed upon it. Having in mind the discrimination theretofore existing in favor of teachers in normal, high, and manual training schools, the purpose of this provision is disclosed, which was we think to place all other teachers on an equal basis with those theretofore specially favored. To illustrate: Under the old law an elementary teacher brought into the service from another jurisdiction received no credit for previous experience. Under the new law, whether she was in the service or should thereafter be brought into it, she was to receive credit for previous experience.

A careful analysis of the provision under consideration supports this view. The language is: "All teachers, * * * assigned to classes 1, 2, 3, and 4 of the foregoing schedule in the service of the said board on July 1, 1924, or thereafter appointed shall receive their longevity increase according to their previous number of years of experience *in teaching in like positions in accredited schools to those which they hold on July 1, 1924, or to which they may thereafter be appointed."* (Italics ours.) Had it been the intent of Congress to add to the longevity increase *already provided* for local teachers who had not been brought into the service from other jurisdictions, the qualifying words, "in teaching in like positions in accredited schools to those which they hold on July 1, 1924," would have been unnecessary.

This becomes still more apparent on consideration of the fact that, in doing away with the discrimination against teachers brought in from the outside, other than those serving in normal, high, and manual training schools, substantially the same language is used as that employed in the act of 1908 making that discrimination. The act of 1908 was intended to embrace, and could only embrace, teachers brought in from other jurisdictions. Local teachers were already receiving longevity placement. So here, under other provisions of the act, local teachers, as already demonstrated, received longevity credit.

It is apparent from our analysis of the act of 1924 that it is quite complicated and that some of its provisions are obscure. In such a situation, "reports of the committees

of Congress and statements by those in charge of the measure, and other like extraneous matter, may be taken into consideration to aid in the ascertainment of the true legislative intent." United States et al. v. Missouri Pacific R. R. Co., decided January 2, 1929, in the Supreme Court of the United States, 278 U. S. 269, 49 S. Ct. 133, 136, 73 L. Ed. 322; Wisconsin R. R. Comm. v. C., B. & Q. R. R. Co., 257 U. S. 563, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086. The report of the Senate Committee on the District of Columbia and the report of the House Committee on the District of Columbia on the teachers' salary bill of 1924 contained identical illustrations of the increases of teachers' salaries and placements under the new law. We reproduce those illustrations:

"A teacher in class 1, now in the third year of her service, receives $1,490 under the present salary schedule. The proposed bill provides for an adjustment allowance of $10 and one annual increase of $100, so that she will on July 1, 1924, begin to receive a salary of $1,600.

"A teacher in class 4, now in the eighth year of her service, receives $1,650 under the present salary schedule. The proposed bill provides for an adjustment allowance of $50 and one annual increase of $100, *so that she will on July 1, 1924, begin to receive a salary of $1,800.* (Italics ours.)

"A teacher in class 6–A, now in the sixth year of her service, receives $2,180 under the present salary schedule. The proposed bill provides for an adjustment allowance of $20, a longevity increase of $100 earned by the teacher during the current year, and one annual increase of $100, so that she will on July 1, 1924, begin to receive a salary of $2,400."

Miss Newman had actually completed eight years of service, so that her present salary was $1,680. In all other respects the second illustration aptly applies to her case (the basic salary of Miss Newman's class and class 4 being the same), and clearly demonstrates the intent of Congress.

Both Senate and House reports contained the following concerning section 6: "Authority is also given to the board of education to assign newly appointed employees on the basis of experience in accredited schools and allows longevity also for military service. Credit will not be given to the elementary teachers for more than four years of experience, and in the case of high-school teachers not more than five years' experience *in other school systems.*" (Italics ours.) The intent of Congress to place all teachers then in or thereafter brought into the service from "other school systems" on a basis of substantial equality with local teachers is apparent from the language used in these reports. The intent was to take care of a class for which provision had not already been made, and not to authorize double longevity allowances for local teachers.

We rule, therefore, that paragraph (q), § 6, was intended to place upon a basis of approximate equality with local teachers all teachers who had been brought into the service from other jurisdictions and all who might thereafter be so brought into it. This interpretation is in harmony with the reports of the House and Senate Committees, gives force and effect to all the provisions of the act, and carries into effect the evident intent of Congress.

We are constrained, therefore, to reverse the judgment, with costs, and remand the cause for further proceedings not inconsistent herewith.

Reversed.