OTIS MCALLISTER & Co. *v.* UNITED STATES (No. 4159) [1]

[1] C. A. D. 52.

United States Court of Customs and Patent Appeals, April 10, 1939.

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[Oral argument February 7, 1939, by Mr. Tuttle and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain galvanized, corrugated iron sheets dutiable at the rate of seventy-five one-hundredths of 1 cent per pound under paragraph 308 of the Tariff Act of 1930, plus two-tenths of 1 cent per pound under paragraph 309 of the aforesaid act, as assessed by the collector at the port of San Francisco, Calif.

The importer contends that the imported merchandise is properly dutiable either at one-fifth of 1 cent per pound or at 20 per centum ad valorem under paragraph 312 of the Tariff Act of 1930. The importer further contends that even if the merchandise is held to be dutiable under paragraph 308, *supra*, it is not subject to the additional duty under paragraph 309, *supra*.

The pertinent portions of the contested paragraphs are as follows:

PAR. 308. Sheets of iron or steel * * *; corrugated or crimped, seventy-five one-hundredths of 1 cent per pound.

PAR. 309. All iron or steel sheets, * * * when galvanized * * *, shall be subject to two-tenths of 1 cent per pound more duty than if the same was not so galvanized * * *.

PAR. 312. Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel, not assembled, manufactured or advanced beyond hammering, rolling, or casting, one-fifth of 1 cent per pound; any of the foregoing machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting, 20 per centum ad valorem; sashes and frames of iron or steel, 25 per centum ad valorem; sheet piling, one-fifth of 1 cent per pound.

This case was originally decided by the United States Customs Court, Second Division, in *McAllister & Co.* v. *United States*, T. D. 47869, 68 Treas. Dec. 253. The record then before the court consisted of the testimony of four witnesses for the plaintiff. The Government offered no testimony. The court found the imported merchandise to be sheets of metal made from bars or billets of steel or iron, which were first rolled into sheets, then cooled, annealed, galvanized,

cut to size, and corrugated. The court also found that said goods were chiefly used in the construction of buildings and formed the walls and roofs thereof and that the corrugation added strength to the sheets. Upon these findings the court rendered judgment in favor of the importer and held the merchandise to be properly classifiable as structural shapes under paragraph 312, *supra.*

At a rehearing of the case seven expert witnesses appeared for the Government. They all testified, in substance, that the said corrugated sheets were not known in the building industry as structural shapes, in that they were not primarily constructed to resist strain and support weight and that they were designed for use merely to function as sidings and roofs of buildings. Their testimony was supported by several industrial publications all of which indicate that in the steel industry the imported merchandise is not known as structural shapes. Appellant added to its record the testimony of an additional witness, who testified, as an expert, that the corrugated sheets were designed to resist wind load as well as weather and carry a live load as on a roof.

The facts in the case are not involved and, in large part, the testimony of both parties is in agreement. The point of difference is that the testimony for appellant is to the effect that in designing a building an engineer is required to take into consideration the wind load and that when corrugated sheets are used and are properly proportioned they carry this load and also the snow load (in effect a live load); that the sheets are corrugated to absorb lateral stress (a tendency for the material to pull apart) and actually accomplish this purpose and that corrugation materially increases the carrying capacity of the sheets.

As opposed to this, the evidence on behalf of the Government is to the effect that the strength of the sheets is not taken into consideration in the planning of buildings and that they are not designed for use as hereinbefore stated.

There is no evidence that the sheets are used for building structures without a framework. After a skeleton or frame of either wood or metal for a building is erected, the corrugated sheets are simply attached to the frame and constitute part of the sides or roof as any other covering, such as boards, shingles or other material which might be used.

Upon this enlarged record the court below found the merchandise to be galvanized, corrugated sheets of iron or steel and held them to be properly dutiable as hereinbefore set out.

The question as to what constitutes structural shapes has been before this court in prior cases. However, no precise definition of structural shapes can be laid down to cover the term. Each case

must be determined in the light of its record. *Judson Freight Forwarding Co.* v. *United States,* 20 C. C. P. A. (Customs) 229, 235, T. D. 46038.

Of course there can be no question but that a roof covering which is always fastened to beams of some character and the sidings which are likewise attached to the upright studding must, of necessity, lend strength, in some degree, to the structure in which they are placed.

It is also true that in constructing buildings the roof must have a load carrying capacity and likewise that the sides must be able to withstand the stress of wind and weather. We are convinced, however, that as to load carrying and wind resistance the elements of the building designed to function in these respects is not the coverings but the framework. The record does not disclose that the sheets of themselves are designed to carry a building load or stress. That the corrugated sheets are stronger than flat sheets of the same material is a physical fact. That they help to form a strong, long wearing siding and roof when fastened to the frame is self-evident. That they are designed for use as load carrying members in the building art, however, is not the fact. The sheets comprising the roof and sides of a building are really carried by the frame of the building. A strong wind would quickly flatten a siding of the imported material if it were not adequately supported by a framework and a roof of the sheets would collapse under a weight if the sheets were not sufficiently supported by the underlying joists. We are convinced that any strength that may be incorporated in a structure by the use of the imported merchandise is at best incidental.

We have examined with care the cases cited in the excellent brief of appellant but find in none of them facts that would make the application of the holdings therein appropriate to the decision here.

To hold that the sheets which cover the framework in a building are structural shapes would, inevitably, lead us far afield. *European Trading Co.* v. *United States,* 19 C. C. P. A. (Customs) 82, T. D. 45225. We therefore hold that the imported merchandise was properly adjudged to be dutiable as sheets of iron or steel, corrugated, under paragraph 308, *supra.*

In its second contention, as above set out, appellant claims that the goods are not "sheets" or "plates" within the meaning of paragraph 309, *supra.*

Congress very clearly recognized, in enacting paragraph 308, *supra,* that corrugation does not change a sheet of iron or steel into something else. The only possible meaning that can be derived from a reading of the said paragraph is that Congress intended to levy a duty upon all kinds of iron or steel sheets not otherwise provided for, whether they were corrugated or not. Under the facts in the instant case there

is no ambiguity in the statute involved and we are therefore precluded from examining its legislative history. *United States* v. *Missouri Pacific Railroad Co.*, 278 U. S. 273, 278. There is no issue of commercial designation here. The statute, therefore, must be construed according to its ordinary meaning. The imported merchandise is a broad, thin piece of iron or steel substance and thus answers the dictionary definitions of the term "sheet." Since, in our opinion, the word "sheet" includes not only the flat sheets but likewise the corrugated sheets there can be no question but that in enacting paragraph 309, *supra*, and using the words "all iron or steel sheets," the corrugated variety must of necessity be therein included. It requires no citation of authority to assert that the words of the statute are the best evidence of the intent of the legislature.

Appellant, among other references, cites the case of *American Express Co.* v. *United States*, 3 Ct. Cust, Appls. 475, T. D. 33121, as being direct authority in support of its contention here.

The importation in that case consisted of thin pieces of edible gelatin about 8 inches long and 3 inches wide. The edges were irregular and uneven and the surfaces contained dents or depressions on one side corresponding to elevations on the other. The Government contended that in accordance with the dictionary definitions cited, the articles were in sheets, while the importer contended that they were more appropriately designated as "strips."

The court in that case said:

Our conception of the meaning of the word "sheet" of anything, as generally understood, would be, in the first instance, somewhat varied according to the nature, value, and use of the material of which the alleged sheets were composed.

Further on the opinion states: "Each case must stand upon its own particular facts." By reason that the merchandise in that case had irregular and uneven edges and surfaces the court stated that this condition made "against rather than in favor of their being described in common speech by the word 'sheets.'"

The facts here are so different from those of the above-mentioned case that the holding therein is not applicable. The surface of the instant articles is smooth and even, although it is in regular waves. It is of small value and the use to which it is put is that of a flat covering, as hereinbefore set out.

In view of the particular facts contained in this record, we are of opinion that the merchandise, in addition to being held properly dutiable under paragraph 308, *supra*, was likewise properly assessed for duty under paragraph 309, *supra*.

The judgment appealed from is *affirmed*.

BLAND, Judge, concurs in the result.