GLOBAL VAN LINES, INC. and Wheaton Van Lines, Inc., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and The United States of America, Respondents.

No. 82–4169

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1982.

Alan F. Wohlstetter, Stanley I. Goldman, Washington, D. C., for petitioners.

Edward J. O'Meara, Gen. Counsel, ICC, Washington, D. C., for respondents.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Petitioners claim the Interstate Commerce Commission exceeded its statutory authority by granting a household goods broker's license to an agent for a motor common carrier of household goods. We find no statutory prohibition against agents becoming brokers and, therefore, affirm.[1]

Mullen Bros. of North Adams, Mass., Inc. is a motor carrier of household goods with authority to provide service in the eastern United States. Since 1981, Mullen Bros. has also been an agent for Aero Mayflower Transit Co., a national household goods motor carrier. In 1981, Mullen Bros. applied to the Commission for a license to operate as a broker of household goods transportation between all points in the United States.[2]

Mullen's application stated that its principal carrier, Aero Mayflower, provided excellent service. The application also represented, however, that no carrier can provide top quality service between all points. Thus, Mullen Bros. asserted that it could better serve the public if it could route shipments through the best carrier available in each area. The application was granted by Division 2 of the Commission, acting as an appellate division.[3]

Petitioners, national motor common carriers of household goods, claim that Mullen Bros. was ineligible for a broker's license because the firm was an agent for Aero Mayflower. Petitioners rely upon the statutory definition of "broker": "a person, *other than a motor carrier or an employee or agent of a motor carrier,* that as principal or agent sells ... transportation by motor carrier for compensation." 49 U.S.C. § 10102(1) (Supp. III 1979) (emphasis added). For the reasons set forth below, we find that the statute does not preclude the licensing of a motor carrier as a broker.

The statute itself,[4] read as a whole,[5] solves the problem. Section 10102(1) ex-

---

1. Because one of the petitioners is a corporation organized and existing under the laws of the state of Texas, venue is properly in this court. 28 U.S.C. § 2343 (1976).

2. The application was filed July 21, 1981. Protests were filed by the petitioners in this proceeding, Aero Mayflower Transit Co., and Allied Van Lines, Inc., all motor common carriers of household goods.

3. The application was initially denied by an employee review board to which the Commission delegated initial decision-making authority. *See* 49 U.S.C. §§ 10304, 10305 (Supp. III

1979). Division 2 of the Commission accepted the employee review board's findings of fact, but concluded that the application should be granted.

4. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239, 246 (1978); *American Trucking Ass'ns, Inc. v. I.C.C.,* 659 F.2d 452, 458 (5th Cir. 1981), *petition for cert. filed,* 51 U.S.L.W. 3014 (U.S. June 16, 1982) (No. 82–86).

5. "A statute must be viewed in its entirety, to afford each part an effect harmonious with the

cludes motor carriers, their employees and their agents [6] from the broker definition. This, however, recognizes only that a motor carrier, acting in that capacity, is not required to obtain a broker's license. This interpretation is affirmed when the section is read *in pari materia* with 49 U.S.C. § 10924(c)(2), which provides that a motor carrier soliciting traffic for its own account need not obtain a broker's license.[7] Unless a motor carrier engages in conduct other than solicitation for its own account, it is not considered to be a broker in the statutory sense, any more than it would be in the common understanding of the term, "broker."

This does not mean, however, that a motor carrier *cannot* be a broker. Indeed, if a motor carrier engages in certain activities, it *must* obtain a broker's license:

> The status of any given person in any particular activity depends upon, and is

determined by, what such person does in that respect and not upon what it does, or its status, in some other respect. And the mere possession of carrier status and the holding of a certificate or permit does not relieve a person of the necessity of obtaining a license if in fact such person is engaged in brokerage activities for compensation.

Practices of Property Brokers, 49 M.C.C. 277, 292 (1949) (citation omitted).[8] In fact, "[T]here is substantial precedent for granting broker's licenses to motor carriers." Property Broker Entry Controls, —— M.C.C. ——,.——, 1979 Fed.Carr.Cas. (CCH) ¶ 3904, ¶ 3904.12.

Petitioners rely also on the I.C.C.'s broker regulations, which distinguish between brokers and agents.[9] They contend that the regulations distinguish between brokers and agents because the classifications are mutually exclusive. The argument fails because

whole and consistent with legislative objectives." *Duke v. University of Texas at El Paso,* 663 F.2d 522, 525 (5th Cir. 1981). *Accord, Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525, 532 (1975).

**6.** 49 U.S.C. § 10102(1) treats motor carriers and their agents and employees in an identical way. This opinion, therefore, will use the term "motor carrier" to refer to all three.

**7.** This exemption was clearer prior to the recodification and revision of the Interstate Commerce Act in 1978. Then, 49 U.S.C. § 311(a) provided:

> No person shall for compensation sell or offer for same transportation subject to this chapter ... unless such person holds a broker's license issued by the Commission to engage in such transactions ...: *provided further,* that the provisions of this subsection shall not apply to any carrier holding a certificate or a permit under the provisions of this chapter or to any bona fide employee or agent of such motor carrier, so far as concerns transportation to be furnished wholly by such carrier or jointly with other motor carriers holding like certificates or permits, or with a common carrier by railroad, express, or water.

The 1978 recodification placed the general rule stated before the colon in one section, 49 U.S.C. § 10921 (Supp. III 1979), and the proviso modi-

fying that rule in another section, 49 U.S.C.A. § 10924(c)(2) (West Supp.1982).

**8.** For example, "Motor Common Carriers surrendering to others for compensation shipments, the line hauls of which they, themselves, are not authorized to perform, in whole or in part, are, ... brokers within the meaning of the act and subject to the license requirements of the act." Practices of Property Brokers, 55 M.C.C. 633, 646 (1951).

**9.** 49 C.F.R. § 1045.2(c) (1981) provides:

> (a) "Broker" means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 1045.2(b) (1981) provides:

> (b) "Bona fide agents" are persons who are part of the normal organization of a motor carrier and perform duties under the carrier's directions pursuant to a preexisting agreement which provides for a continuing relationship, precluding the exercise of discretion on the part of the agent in allocating traffic between the carrier and others.

it ignores the historic purpose of these regulations.

The broker regulations originated in ICC rule-making proceedings that attempted, *inter alia,* to clarify when a person was an agent within the meaning of the 49 U.S.C. § 10924(c)(2) licensing exemption.[10] *See* Practices of Property Brokers, 49 M.C.C. 277, 295–303 (1949); Practices of Property Brokers, 55 M.C.C. 633 (1951). Thus, the regulations were an effort to clarify who was not required to obtain a broker's license, not who was barred from licensing.

In the past, the I.C.C. has not approved broker's license applications from agents. For the most part, this policy was not based upon statutory objections.[11] Instead, the Commission held that allowing agents to become brokers would be inconsistent with the public interest and national transportation policy.[12] This holding was premised on two considerations. First, the Commission asserted that "one who is primarily a carrier's agent owes his first duty to his principal and lacks the right to exercise that independence of action which should govern his acts as a broker." Practices of Motor Common Carriers (Agency Relationships), 115 M.C.C. 628, 634 (1972). *See, e.g.,* Lux Broker Application, 53 M.C.C. 730 (1951). Second, the Commission sought to preserve the historic system of exclusive agents in the household goods field. *See* Entry Control of Brokers, 126 M.C.C. 476, ——, 1977 Fed.Carr.Cas. (CCH) ¶ 36,816, ¶ 36,816.08.

As this and other cases [13] indicate, however, the Commission has now reversed its view about the public interest concern with persons acting at once as agents and brokers. Petitioners ask us to consider only their statutory objection to Mullen Bros.' broker's license application. We, therefore, express no opinion as to this shift in the Commission's policy. We do, however, find that the change does not violate 49 U.S.C. §§ 10102(1) (Supp. III 1979) and 10924(c)(2) (West Supp.1982).

For these reasons, the decision is AFFIRMED.

---

**10.** *See supra* note 7.

**11.** Two cases are arguable exceptions. In Nevins Distributors, Inc., Broker Application, 51 M.C.C. 383, 386 (1950), the Commission stated that it was "clear beyond argument that one who is identified with and a part of a shipper's organization ... as ... a bona fide agent, stands in the position of the shipper and is of necessity outside the classification of brokers." *Id.* In Exec-Van Systems, Inc., Broker Application, 128 M.C.C. 669 (1978), the Commission indicated that an agent acting as a broker would violate 49 C.F.R. 1045.2(a). *Id.,* at 677 n.2.

The question presented by this case is one of statutory construction. These agency decisions do not, therefore, control our decision. *See Aberdeen & Rockfish R. R. v. United States,* 682 F.2d 1092, 1096 (5th Cir. 1982); *Coca-Cola Co. v. Atchison, T. & S. F. Ry.,* 608 F.2d 213, 218 (5th Cir. 1979). Moreover, as the I.C.C. decision in this case indicates, the agency's construction of the statute has not been consistent. *Cf. United States v. Missouri Pac. Ry.,* 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322, 377 (1929) (agency's construction of statute not entitled to deference if inconsistent). Therefore, to the extent that *Nevins* and *Exec-Van Systems* are contrary to the opinions expressed here, we decline to follow them.

**12.** The statute requires the Commission to issue a broker's license only if it finds, *inter alia,* that "the transportation for which the person is to be a broker will be consistent with the public interest and the transportation policy of section 10101 of this title." 49 U.S.C. § 10924(a)(2).

**13.** *See* Ward Moving & Storage Co., Inc., Household Goods Broker Application, 132 M.C.C. 589 (1981); J & J Consulting Service, Inc., Household Goods Broker Application, No. MC.–155282 (Sub. No. 1) (served January 11, 1982) (unpublished).