683 F.Supp. 148 (1988)
COMMONWEALTH OF VIRGINIA, ex rel., the VIRGINIA DEPARTMENT OF MEDICAL ASSISTANCE SERVICES
v.
Otis R. BOWEN, M.D., Secretary Health and Human Services.
Horace G. FRALIN, et al.
v.
Otis R. BOWEN, M.D., Secretary Health and Human Services, et al.
Civ. A. Nos. 85-0933-R, 84-1171-R.
United States District Court, W.D. Virginia, Roanoke Division.
March 29, 1988.
William G. Broaddus, Roger L. Chaffe, Robert L. Poff, Pamela M. Reed, Richmond, Va., D. Stan Barnhill, William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Jennie L. Montgomery, Asst. U.S. Atty., Roanoke, Va., James S. Feight, Asst. Reg. Atty., Philadelphia, Pa., for plaintiffs.
E. Montgomery Tucker, Gerald L. Baliles, Atty. Gen., John A. Rupp, Sr. Asst. Atty. Gen., Julia Krebs-Markrich, Asst. Atty. Gen., Richmond, Va., for defendant.

MEMORANDUM OPINION
TURK, Chief Judge.
This case is before the court on a motion for summary judgment made by the defendant (hereinafter the "Secretary"). In an earlier decision, the court denied the Secretary's motion to dismiss, holding that subject matter jurisdiction over disallowance disputes was proper in the district court. Turning now to the merits of the case, the court upholds the decision of the Grant Appeals Board, and accordingly, the motion for summary judgment is granted.
Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396q (1985) (hereinafter the "Medicaid Act"), provides for the establishment of a joint federal-state program in *149 which participating states share with the federal government the cost of providing medical services to certain individuals in need of care. If a state chooses to participate in the Medicaid program, the federal government, through the Department of Health and Human Services, (hereinafter "HHS"), will reimburse the state for a portion of the cost of the Medicaid program. This matching amount, dispensed by the Health Care Financing Administration, (hereinafter "HCFA"), is referred to as federal financing participation, (hereinafter "FFP"). The plaintiff, the Commonwealth of Virginia, (hereinafter the "Commonwealth"), operates an approved program, the Virginia Medical Assistance Program (hereinafter "VMAP"), pursuant to Va. Code Ann. §§ 32.1-321 (1987). The Commonwealth's Medicaid program is administered by the Virginia Department of Medical Assistance Services (hereinafter "DMAS").
Quarterly payments of FFP are conditioned upon the administration by the Commonwealth, and any participating state, of a program consistent with the Medicaid Act and the HCFA regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Because a state does not know how much money will be spent on Medicaid services until a given quarter is over, FFP payments are made prospectively, and subject to later disallowance if the regulations are not met. During the time in question, October 1 to December 31, 1980, the Commonwealth was required to make "a showing satisfactory to the Secretary that ... there is in operation in the State an effective program of control over utilization of such services. ..." § 1396b(g)(1) (1982). Such a showing required evidence that:
(A) in each case for which payment is made under the State plan, a physician certifies at the time of admission ... [or] recertifies ... at least every 60 days ... that such services are or were required to be given on an inpatient basis because the individual needs or needed such services; and (B) in each such case, such services were furnished under a plan established and periodically reviewed and evaluated by a physician; (C) such State has an effective program of medical review of the care of patients in mental hospitals, skilled nursing facilities, and intermediate care facilities pursuant to section 1396(a)(26) and (31) of this title whereby the professional management of each case is reviewed and evaluated at least annually by independent professional review terms.
Section 1396b(g)(1)(A-D) (1982).
In May 1984, HCFA reviewed intermediate care facilities in the Commonwealth. The purpose of the review was to verify compliance with the physician certification requirements of § 1396b(g)(1)(A) and (B). For the last quarter of 1983, HCFA found that sixteen patients, at five facilities, had not been properly certified by physicians. A disallowance in the amount of $292,732.28 was assessed under § 1396b(g)(5) (1982) and withheld from the Commonwealth.
The Commonwealth appealed to HHS' Grant Appeals Board (hereinafter the "Board"). The Commonwealth argued that § 2363(c) of the Deficit Reduction Act of 1984 (hereinafter "DEFRA"), Pub.L. 98-369, deleted the physician certification requirement, and thus, deleted the HCFA's authority to impose a disallowance based on failure to certify.
The Board issued a consolidated decision, on June 7, 1985, for eight state appeals on this common issue of the effect of the DEFRA amendments on disallowances. See HHS Grant Appeals Board Dec. 665 (1985). The Board upheld the HCFA's position. On June 19, 1985, in Decision No. 660, the Board upheld the specific disallowance against the Commonwealth, relying heavily on its previous decision. See Grant Appeals Board Dec. 660 (1985).
The Commonwealth has appealed both of the Board's decisions to this court. In a similar case, Horace G. Fralin and other partners in several partnerships known as Medical Facilities of America, sued the administrators of the VMAP. This suit also involves an interpretation of § 2363(c). *150 Both actions were consolidated for consideration of this issue.
The decisions of the Board are the final decisions of the HHS. This court may review both the administrative record and final decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (1982). The scope of this court's review is limited to whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law...." 5 U.S.C. § 706(2). "The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Upon careful review of the administrative record, statutory language, legislative history and relevant case law, the court finds the Board's decision to be complete and reasonable.
The first step in statutory interpretation is the plain meaning test. United States v. Missouri Pacific Railroad Co., 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929). Section 2363(c) states:
The amendments made by subsection (a) apply to calendar quarters beginning on or after the date of the enactment of this Act, except that, in the case of individuals admitted to skilled nursing facilities before such date, the amendments made by such subsection shall not require recertifications sooner or more frequently than were required under the law in effect before such date.
Under the DEFRA amendments, the physician certification requirement has been deleted. See § 2363(a)(2). The effective date of this change is controlled by § 2363(c). The first part of § 2363(c) refers to the relevant amendments and applies "to calendar quarters beginning on or after the date of the enactment of this Act." The President signed DEFRA on July 18, 1984. Thus, the first quarter affected by the § 2363(a) changes begins October 1, 1984, and would have no applicability to earlier quarters.
The crux of this dispute, however, centers on the possible retroactivity of the DEFRA amendments. The exception clause in § 2363(c), although aimed at a different matter, touches upon the retroactivity issue. Section 2363(a)(4) changed the required frequency of physician recertification. The exception clause evidences Congress' belief that this change might result initially in more recertifications. The exception clause does not require the state to enact this change "before such date." § 2363(c). The question is whether the exception clause is controlled by the enactment date of July 18, 1984, or the operative date of October 1, 1984. The court believes the latter date controls.
Section 2363(a) altered how a state makes a satisfactory showing. Showings are made on a quarterly basis. The July 18, 1984 enactment date falls in the midst of the third quarter, whereas the October 1, 1984 operative date marks the beginning of the fourth quarter.
Also, the first part of § 2363(c) refers to the "amendments made by subsection (a)." Literally, this refers to all amendments made by subsection (a), and not to the amendments made by subsection (a), except for those dealing with recertification. Thus, one date should control § 2363(c) in order that the subsection be internally consistent.
The plain meaning of § 2363(c) does not specifically address the issue of retroactivity. The fact that the statute mentions one date implies that the amendments were to go into effect beginning October 1, 1984, and apply only to future quarters. However, the court agrees with the Board that varying interpretations are feasible. An examination of the legislative history lends support to the proposition that the DEFRA amendments were intended by Congress to have prospective effect.
The starting point for this inquiry is a consideration of Congress' motivation for passing the DEFRA amendments. The DEFRA amendments were precipitated by a report made by the HHS Office of Inspector General. The report reviewed the impact of periodic recertification requirements on the quality of patient care. The HHS Inspector General found the requirement *151 of physician recertification every sixty days failed to improve patient care, and in fact, wasted limited physician and facility resources. The report recommended the elimination of periodic recertification. The HCFA did not agree but proceeded to explore possible alternatives. The Board in arriving at its decision, acknowledged this report.
The Conference Report on DEFRA, H.R. Rep. No. 861, 98th Cong., 2d. Sess. 1362-3 (1984), 1984 U.S.Code Cong. and Ad.News 2050-2051, in discussing disallowances based on failure to attain periodic physician certification, stated:
c. Penalty
Present Law
The Federal penalty imposed on States which fail to have an adequate utilization control program is 33 1/3 percent times the ratio of the number of patients in facilities with one or more records out of compliance to the total number of patients in facilities in the State.
House bill
The House bill would provide for a penalty equal to 5 percent times the ratio of the number of patient records out of compliance to the number of patient records included in the survey. No penalty would be imposed if the ratio were 3 percent or less.
Senate amendment
The Senate amendment would provide for a penalty equal to 5 percent times the ratio of the number of patients in facilities with one or more records out of compliance to the total number of patients in the State. No penalty would be imposed if less than 3 percent of the surveyed records were out of compliance.
Conference agreement
The conference agreement follows the Senate amendment with modifications as follows: Effective July 1, 1984, the current penalty would not apply to the physician recertification requirement with respect to SNF or ICF patients. However, the current penalty would continue to apply to the requirement that States have an effective program of medical review. The Conferees intend that the Secretary ensure that the States continue to comply with the physician recertification requirements, as revised by this agreement.
While the Conference Report unambiguously refers to a July 1, 1984 effective date for the application of recertification penalties, the significance of this date is unclear. The Board dealt with this discrepancy by referring to a state brief at the administrative level. That brief explained that in June of 1984, Congress labored to pass the DEFRA amendments. DEFRA was passed in both Houses on June 27, 1984, and enjoyed Presidential support. Thus, an assumption of a July 1, 1984 effective date was not unreasonable. In addition, the Conference Report was written weeks before this date. The court agrees with the Board's explanation. Although the report does refer to an effective date for a penalty in the form of a disallowance, for failure to certify, the report does not indicate what effect the amendments were to have on not yet final disallowances, such as in the present case.
The Commonwealth also relies on the HCFA Legislative Summary, dated August 1, 1984 which states:

Effective Date: Beginning July 1, 1984, the current law penalty would not apply to the physician recertification requirements with respect to [skilled nursing care] or [intermediate care facility] patients. The revised certification provisions are effective with calendar quarters beginning on or after enactment, except that no admission occurring before that date will be required to be recertified more frequently than under prior law.
For reasons similar to those stated with reference to the Conference Report, the court discounts the significance of the Legislative Summary's July 1, 1984 date. The actual enactment date of the DEFRA amendments was July 18, 1984, and the effect of DEFRA on not yet final disallowances is unclear. In addition, the Commonwealth does not proffer the Legislative Summary as an "official" interpretation, although such a claim was made at the *152 administrative level. See Virginia State Department of Health v. HCFA, HHS, No. 84-214.
In reconciling the conflicting dates, the court agrees with the Board that the significance of the July 1, 1984 date is outweighed by the actual enactment date of July 18, 1984, [which translates into an effective date of October 1, 1984], and the need for a uniform application of the amendments. The July 1, 1984 date would halt any disallowance penalties as of that date, whereas the DEFRA amendments as a whole would not come into effect until October 1, 1984. During this four month interim, physician certification requirements would persist, but the federal government would be without the power to enforce such requirements. Thus, one effective date for the entire subsection is warranted.
In line with the plain meaning of the amendments and the legislative history, Supreme Court case law on retroactivity also supports a prospective application of the DEFRA amendments. The Commonwealth relies on the statutory construction presumption of Bradley v. School Board, 416 U.S. 696, 711-16, 94 S.Ct. 2006, 2016-18, 40 L.Ed.2d 476 (1974), which mandates that a court is bound to apply the law in effect at the time it renders its decision. While "Bradley held that a statutory provision for attorney's fees applied retroactively to a fee request that was pending when the statute was enacted," Bennett v. New Jersey, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985), the Bradley court also provided for a "manifest injustice" exception. "The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that has matured or become unconditional." Bennett, 470 U.S. 632, 105 S.Ct. 1555; see Bradley, 416 U.S. 696, 720, 94 S.Ct. 2006, 2020.
Bradley was re-examined in Bennett, the case which the Board found controlling. Bennett involved the government's right to recover funds improperly disbursed by the state under a federal grant program in the years 1970-72. The state argued that the more liberal 1978 eligibility criteria should be applied retroactively to determine if the funds were misused. The Supreme Court, in finding neither statutory language nor legislative history to the contrary, held "changes in the substantive standards governing federal grants programs do not alter obligations and liabilities arising under earlier grants." Id. 105 S.Ct. at 1561.
In its analysis, the Court emphasized the contractual nature of federal grant programs. Id. at 1559; see also Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 7, 101 S.Ct. 1531, 1534-35, 67 L.Ed.2d 694 (1981). States that choose to participate in Title I programs must abide by the conditions of Title I. Bell v. New Jersey, 461 U.S. 773, 790, 103 S.Ct. 2187, 2197, 76 L.Ed.2d 312 (1983). Similarly, Title XIX provides for the establishment of a cooperative federal-state Medicaid program. States are not required to participate, but if they so choose, the states must administer a program, consistent with the Medicaid act and HCFA regulations. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680.
The Commonwealth attempts to distinguish Bennett on the facts. In Bennett, the federal grant funds were "misused", see Bell, 461 U.S. 773, 791, 103 S.Ct. 2187, 2197, whereas in the present case, the disallowance was assessed because of the Commonwealth's failure to meet the technical requirements of certification. The Commonwealth argues that its procedure for utilization review was buttressed by annual on-site reviews. For patients with incomplete certification records, this procedure enabled the Commonwealth to recover and return the necessary FFP to the HCFA. The Commonwealth argues that this procedure was sanctioned by the HCFA and required the HCFA to find the Commonwealth's showing satisfactory.
The court agrees with the Secretary that this argument is facially persuasive. However, such a process runs contrary to the regulations. First, the regulations require the HCFA to reduce FFP "[f]or each level of care specified in a provider agreement, *153 and for each quarter for which a satisfactory showing is not made...." 42 C.F.R. § 456.657(a) (1987). See 42 C.F.R. § 456.652(a)(1) and (2) (1987). Although the Commonwealth may have identified and corrected some of its certification deficiencies when it conducted annual on-site reviews, the HCFA determinations of disallowances are based on a higher standard. The HCFA is required to reduce the FFP, regardless of the Commonwealth's self-policing, if the recertification requirements were not met. Because the Commonwealth did not make such a showing, the disallowance determination was proper.
Second, the Commonwealth lumps together the separate requirements for recertifications under § 1396b(g)(1)(A) & (B) (1982), and the requirements for annual on-site reviews. Each requirement serves a different purpose and evidence of each is necessary for a state's satisfactory showing. The HCFA's approval of the annual on-site review in no way suggested such a procedure, by itself, was sufficient to show a satisfactory utilization control program.
In finding Bennett analogous to the instant case, the question remains whether the DEFRA amendments affect a substantive or procedural change. The relevant DEFRA amendments may be summarized as follows:
§ 2363(a)(1) amended § 1396a and, among other things, inserted a new paragraph (44) requiring state Medicaid plans to provide for physician certification and recertification of patients for long term services;
§ 2363(a)(2) amended § 1396b(g)(1), deleted the physician certification requirements and inserted language requiring the State's quarterly showing to include only evidence that the medical review program was met;
§ 2364(a)(4) deleted some provisions requiring the Secretary to report on utilization control actions and inserted a ten day grace period if the State establishes good cause why the recertification schedule was not met.
The substantive change centers on the Commonwealth's obligations concerning how to make a satisfactory showing, and in particular, the necessity of periodic physician certifications. Such amendments necessarily have procedural consequences. However, the primary effect was substantive and is supported by the legislative history finding that the pre-amendment certification requirements were counterproductive.
In conclusion, the court has reviewed the final agency determination and finds the Board's decision was neither arbitrary nor capricious. Rather, the Board carefully considered all the relevant arguments and properly concluded that 1) the Commonwealth's showing for the given period was unsatisfactory in that the Commonwealth failed to properly certify several patients, 2) such failure necessarily resulted in the disallowance of future monies to the Commonwealth, and 3), the DEFRA amendments did not preclude the imposition of such a disallowance for an unsatisfactory showing prior to October 1, 1984.
For the reasons stated above, the Secretary's motion for summary judgment is granted.