The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 19, 2020

## 2020COA163

**No. 19CA0546, *Cisneros v. Elder* — Government — Colorado
Governmental Immunity Act — Immunity and Partial Waiver —
Jail or Correctional Facility**

The Colorado Governmental Immunity Act provides a right to
sue only for statutorily specified acts of government entities.  In this
suit, plaintiff Saul Cisneros seeks damages for an intentional act
committed by Sheriff Bill Elder, namely, false imprisonment for
failure to release Cisneros from the county jail.  Because section 24-
10-106(1.5)(b), C.R.S. 2019, of the Act does not provide a right to
sue a jailor for intentional acts, a division of the Court of Appeals
reverses the district court's order that declined to dismiss the suit.

The special concurrence would reach the same result but
would not resort to section 24-10-106(1.5)(b)'s legislative history in
doing so.

The dissent would find that section 24-10-106(1.5)(b) waives sovereign immunity for injuries resulting from the operation of a jail even if those injuries were caused by intentional conduct.

Court of Appeals No. 19CA0546
El Paso County District Court No. 18CV32870
Honorable Eric Bentley, Judge

Saul Cisneros,

Plaintiff-Appellee,

v.

Bill Elder, in his official capacity as Sheriff of El Paso County, Colorado,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE TERRY
Johnson, J., specially concurs
Richman, J., dissents

Announced November 19, 2020

Holland & Hart LLP, Stephen G. Masciocchi, Peter A. Kurtz, Denver, Colorado; Mark Silverstein, Arielle Herzberg, Denver, Colorado, for Plaintiff-Appellee

Diana K. May, County Attorney, Mary Ritchie, Assistant County Attorney, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1    Plaintiff, Saul Cisneros, is no longer being held in jail by defendant, Bill Elder, the Sheriff of El Paso County.  In this action, Cisneros seeks money damages for having been wrongfully held there.

¶ 2    State and local governmental entities in Colorado, including jails and the people who run them, are generally immune from being sued.  Cisneros chose to sue under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2020, which waives sovereign immunity — in other words, allows suit against governmental entities and public employees — under specified circumstances.  If there is not a statute that gives a right to sue a governmental entity or employee, a plaintiff's suit against the entity or employee must be dismissed.

¶ 3    In this case, Cisneros argued that a statute that allows suit to be brought against Elder for negligence also allowed Elder to be sued for *intentional* conduct — specifically, the decision to keep Cisneros imprisoned even though his daughter had posted bond to secure his conditional release.  The district court read the pertinent provision of the CGIA to permit the suit to go forward against Elder.

1

¶ 4      We reverse this decision for a simple reason: "negligence" means negligence; it does not mean intentional conduct.  The General Assembly never meant for this statute to apply to intentional conduct.  Because we are bound by the General Assembly's legislative intent in enacting the pertinent provision, we must reverse the district court's decision.

## I.      Background

¶ 5      Under federal law, Immigration and Customs Enforcement (ICE) may request that state or local law enforcement continue detaining an inmate after the state's authority to imprison that inmate has expired.  Such a request is made when ICE believes that an inmate may be removable from the United States.  This continued detainment, often referred to as an "ICE hold," gives ICE officials time to take the inmate into federal custody.

¶ 6      Elder created a written policy and practice of complying with requests for ICE holds.  Upon receipt of either an ICE immigration detainer or administrative warrant, he would continue to detain inmates who had posted bond, completed their sentence, or otherwise resolved their criminal case.

2

¶ 7 Cisneros was arrested and detained at El Paso County's Criminal Justice Center. After his daughter posted the $2,000 bond set by the court, Cisneros was not released from custody. Instead, Elder placed an ICE hold on Cisneros and continued to detain him for four additional months.

¶ 8 Cisneros and another person brought a class action lawsuit in state court against Elder seeking declaratory, mandamus, and injunctive relief. The complaint in that case alleged that by continuing to detain inmates after they had posted bond or completed their sentence, Elder exceeded his authority under state law.

¶ 9 After a preliminary injunction was granted in that case, Cisneros was released from custody. Cisneros then brought this lawsuit against Elder, alleging that his continued detainment constituted false imprisonment. Elder moved to dismiss Cisneros's complaint under C.R.C.P. 12(b)(1), asserting that he is immune from liability under the CGIA. After concluding that any immunity had been waived because Cisneros's alleged injury occurred during Elder's operation of a jail, the district court denied Elder's motion.

3

## II. CGIA's Waiver of Immunity for the Operation of a Jail Does Not Apply to Intentional Torts

¶ 10 Elder contends that the district court erred by concluding that the CGIA's waiver of governmental immunity for the operation of a jail applies to injuries caused by intentional torts. We conclude, based on the statute's language and legislative history, that section 24-10-106(1.5)(b), C.R.S. 2020, does not waive immunity for injuries caused by intentional torts.

### A. Preservation and Standard of Review

¶ 11 Elder preserved this issue for appeal.

¶ 12 Governmental immunity implicates issues of subject matter jurisdiction, which are determined in accordance with C.R.C.P. 12(b)(1). *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997). If the relevant facts underlying a trial court's jurisdictional findings are undisputed and the issue presents a question of law, then appellate review is de novo. *Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 10. Here, because the relevant facts are undisputed and the district court's holding turns on its interpretation of the CGIA, our review is de novo. *See Fogg v.*

4

*Macaluso*, 892 P.2d 271, 273 (Colo. 1995) (the construction of a statute is a question of law subject to de novo review).

> B. The CGIA's Partial Waiver of Governmental Immunity for Injuries Resulting from Negligence in the Operation of a Jail

¶ 13     Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury which" lie or could lie in tort. § 24-10-106(1). Immunity is waived in actions for injuries resulting from a public entity's or employee's operation of a jail or correctional facility. § 24-10-106(1)(b). But that waiver only applies when a claimant "who [is] incarcerated but not yet convicted . . . can show injury due to negligence." § 24-10-106(1.5)(b). The issue here — whether the phrase "injury due to negligence" includes injuries that result from intentional torts — is one of first impression.

> C. Construction of the Statutory Immunity Waiver

¶ 14     In construing a statute, our primary purpose is to ascertain and give effect to the legislature's intent. *McCoy v. People*, 2019 CO 44, ¶ 37. To do this, we first look to the language of the statute, seeking to give its words and phrases their plain and ordinary meanings. *Id.* In so doing, we consider "the statute as a whole, construing each provision consistently and in harmony with the

5

overall statutory design." *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002).

¶ 15    If a statute is clear and unambiguous, we need look no further than the plain language to determine the statute's meaning. *McCoy*, ¶ 37.

¶ 16    But if the statute is ambiguous, we may consider other factors, including canons of statutory construction and legislative history. *Id.*; *Hotsenpiller v. Morris*, 2017 COA 95, ¶ 2; § 2-4-203, C.R.S. 2020; *see also People v. Butler*, 2017 COA 117, ¶¶ 23-25 (a statute is ambiguous if it is susceptible of more than one reasonable understanding). And "the reasons for and the significant circumstances leading up to the enactment [of a law] may be noticed in confirmation of the meaning conveyed by the words used." *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929).

### 1.    Section 24-10-106(1.5)(b)'s Plain Language

¶ 17    Cisneros contends that section 24-10-106(1.5)(b) can be read as encompassing intentional torts because the statute does not say that the CGIA's waiver applies *only* if the claimant can "show injury

6

due to negligence," and that the statute "sets a floor, not a ceiling," for imposing liability. This argument is refuted by the statutory language.

¶ 18    Section 24-10-106(1.5)(b) states that, for the operation of a jail, sovereign immunity is waived if a pretrial detainee can show "*injury due to negligence.*" *Id.* (emphasis added). This provision makes no reference to intentional actions or intentional torts. Instead, the sole focus is on negligence.

¶ 19    The inclusion of certain items implies the exclusion of others. *Cain v. People,* 2014 CO 49, ¶ 13 (discussing the legislative interpretation canon, *expressio unius est exclusio alterius*), *as modified* (July 2, 2014). Because the plain language of section 24-10-106(1.5)(b) references only negligence, the waiver of sovereign immunity under that provision must be read as applying only to injuries caused by negligence, and not to injuries caused by intentional torts. *See Cain,* ¶ 13 (holding, based on the canon of *expressio unius,* that the General Assembly's inclusion of "a single, specific, narrow exception" meant that the General Assembly intended "that there be no other exceptions" to the statute); *see also*

*Dubois v. Abrahamson*, 214 P.3d 586, 588 (Colo. App. 2009) (appellate courts may not read additional terms into, or modify, a statute's explicit language).

¶ 20    Governmental immunity can only be waived by express statutory provision.  *Pack v. Ark. Valley Corr. Facility*, 894 P.2d 34, 37 (Colo. App. 1995) (if no express waiver of immunity has been granted, a court may not imply such a waiver).  Simply put, unless the legislature has created liability by statute for a given type of governmental conduct, governmental entities are immune from suit.

¶ 21    Because sovereign immunity for the operation of a jail is waived only when an inmate's injury is the result of negligence, we must conclude that the waiver of immunity under section 24-10-106(1.5)(b) does not apply to injuries caused by intentional torts.

¶ 22    Cisneros's sole claim is for false imprisonment, and in that claim, he asserts only intentional conduct — namely, that Elder "knowingly and intentionally restricted [Cisneros's] freedom of movement," and did so "without legal justification."  Thus, liability is not waived for the alleged conduct under the CGIA.

## 2.    Culpable Mental States

¶ 23    Citing a criminal statute, Cisneros argues that our reading of the CGIA disregards the legal principle that more culpable mental states subsume less culpable ones.  *See* § 18-1-503(3), C.R.S. 2020 ("If a statute provides that criminal negligence suffices to establish an element of an offense, that element also is established if a person acts recklessly, knowingly, or intentionally.").  Laying aside the dubious proposition that a criminal law concept can be applied in the civil, governmental immunity context, we are not persuaded by this argument.

¶ 24    It is settled Colorado law that negligence and intentional torts are two different things.  *See Redden v. SCI Colo. Funeral Servs., Inc.,* 38 P.3d 75, 80-81 (Colo. 2001) ("Fault is broader than negligence, including, for example, intentional torts . . . ."), *as modified on denial of reh'g* (Jan. 14, 2002).  And although there are different levels of negligence, such as simple negligence and gross negligence, those levels of negligence are still distinct from intentional actions.  *See White v. Hansen,* 837 P.2d 1229, 1233 (Colo. 1992) ("The common thread that separates [willful and

9

wanton misconduct, willful and wanton negligence, gross negligence, reckless conduct, and reckless negligence] from ordinary negligence is that the defendant's conduct is so aggravated as to be *all but intentional*.") (emphasis added).

¶ 25 Further, by its very definition, negligence does not include intentional acts. Black's Law Dictionary (11th ed. 2019) (defining negligence as "any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, *except for conduct that is intentionally . . . disregardful of others' rights*") (emphasis added). Therefore, we are not persuaded by Cisneros's argument that because intentional acts subsume negligent ones, section 24-10-106(1.5)(b) must apply to intentional torts.

### 3. Legislative History

¶ 26 It can be argued that because the CGIA is in derogation of the common law of negligence, courts should broadly construe the statute's provisions that waive immunity in the interest of compensating victims injured by the negligence of government agents. *See Lopez v. City of Grand Junction*, 2018 COA 97, ¶ 18

("Because governmental immunity from suit derogates the common law of negligence, courts must strictly construe the CGIA provisions that grant immunity . . . [while] broadly constru[ing] the [CGIA] provisions that waive immunity . . . .").

¶ 27     But we can't adopt a broad reading of section 24-10-106(1.5)(b) unless we were to see at least some ambiguity in the statutory language, which, as we have said, we do not.  Even so, for the sake of completeness, we will review the legislative history of subsection (1.5)(b), as the district court did.  *See Mo. Pac. R.R. Co.*, 278 U.S. at 278 (holding that the reasons for and the significant circumstances leading up to the enactment of a law "may be noticed in confirmation of the meaning conveyed by the words used").  That history reinforces our reading of the statute.

¶ 28     As originally drafted, section 24-10-106(1.5)(b) would have reinstated sovereign immunity for *all* injuries resulting from the operation of a jail.  H.B. 94-1284, 59th Gen. Assemb., 2d Reg. Sess. (Colo. 1994) (as reengrossed, Apr. 12, 1994).  The bill was then amended to waive immunity for pretrial detainees "*only* if the person [could] show injury due to negligence."  H.B. 94-1284, 59th

11

Gen. Assemb., 2d Reg. Sess. (Colo. 1994) (as revised, May 9, 1994) (emphasis added). In the final version of the bill, the word "only" (italicized above) was removed and the law, as enacted, then read, "The waiver of sovereign immunity [applies] to claimants who are incarcerated but not yet convicted . . . if such claimants *can show injury due to negligence.*" H.B. 94-1284, 59th Gen. Assemb., 2d Reg. Sess. (Colo. 1994) (as re-revised, May 10, 1994) (emphasis added).

¶ 29 Cisneros contends that this statutory development of section 24-10-106(1.5)(b) demonstrates that the statute applies to intentional torts. Again, according to Cisneros, because section 24-10-106(1.5)(b) does not state that claimants can *only* show injury due to negligence, claimants must therefore be able to show injury from causes other than negligence, including intentional torts. We disagree, because we conclude that the remaining legislative history, consistent with the statute's plain language, refutes such an interpretation.

¶ 30 House and senate hearings on the need for section 24-10-106(1.5)(b) demonstrate that this statute was introduced in

12

response to concerns about inmates bringing frivolous *negligence* claims against jails and correctional facilities. Hearing on H.B. 1284 before the S. Judiciary Comm., 59th Gen. Assemb., 2d Reg. Sess. (Apr. 18, 1994); Hearing on H.B. 1284 before H. State Affairs Comm., 59th Gen. Assemb., 2d Reg. Sess. (Feb. 17, 1994).

¶ 31     Intentional torts were not a reason for the introduction of this bill. Hearing on H.B. 1284 before the S. Judiciary Comm., 59th Gen. Assemb., 2d Reg. Sess. (Apr. 18, 1994); Hearing on H.B. 1284 before H. State Affairs Comm., 59th Gen. Assemb., 2d Reg. Sess. (Feb. 17, 1994). In fact, all of the examples that legislators pointed to in demonstrating the need for this law concerned negligence, not intentional acts. Hearing on H.B. 1284 before the S. Judiciary Comm., 59th Gen. Assemb., 2d Reg. Sess. (Apr. 18, 1994). And in the Senate's second reading, Senator Dick Mutzebaugh — one of the bill's sponsors — said that the bill was intended to deal with nuisance lawsuits involving "negligence and things like that." 2d Reading on H.B. 1284 before the S., 59th Gen. Assemb., 2d Reg. Sess. (May 9, 1994).

¶ 32    The legislative history also shows that the bill's sponsors

believed that the law would not cover intentional acts. *People v.*

*Zapotocky*, 869 P.2d 1234, 1239 (Colo. 1994) (noting that the

statements of a bill's sponsor "should be accorded substantial

weight").

¶ 33    During the House State Affairs Committee's hearing on the

bill, one sponsor, Representative Martha Kreutz, remarked that

"malicious conduct," such as intentionally withholding food or

medicine from inmates, would be dealt with via a federal civil rights

claim under 42 U.S.C. § 1983 (2018) and would not implicate the

proposed legislation. Hearing on H.B. 1284 before the H. State

Affairs Comm., 59th Gen. Assemb., 2d Reg. Sess. (Feb. 17, 1994).

¶ 34    And Senator Jim Rizzuto, during the Senate's third reading,

asked Senator Mutzebaugh whether the bill's reference to

negligence encompassed acts greater than negligence, such as gross

negligence or intentional torts. 3d Reading on H.B. 1284 before the

S., 59th Gen. Assemb., 2d Reg. Sess. (May 10, 1994). Senator

Mutzebaugh responded that he believed that if an inmate was

intentionally injured, that would constitute a section 1983 civil rights violation and that he did not "want to get into that area." *Id.*

¶ 35 We conclude that this legislative history — specifically the bill's sponsors' repeated statements that intentional acts would not be handled under this law — refutes Cisneros's argument that section 24-10-106(1.5)(b) applies to intentional torts. The history confirms our reading of section 24-10-106(1.5)(b): the law's waiver of governmental immunity applies only to injuries resulting from negligence. *See Mo. Pac. R.R. Co.*, 278 U.S. at 278 (legislative history can be used to confirm a statute's plain meaning).

### D. Takeaways

¶ 36 It is not the proper role of this court to condone or condemn Elder's actions. Our role is limited to deciding the entirely separate question of whether section 24-10-106(1.5)(b) provides a remedy for those actions.

¶ 37 Our careful review of section 24-10-106(1.5)(b) itself, as well as the legislative history behind the statute, convinces us that it cannot be relied on to provide a remedy for intentional conduct; it applies only to negligent conduct that results in injury. It may

strike reasonable people the same way as it did the district court, that if liability is waived for negligent conduct, it should also be waived for intentional conduct. But we are bound to apply the law as written, and the pertinent provision of the CGIA simply does not permit imposition of governmental liability for intentional conduct.

¶ 38    We therefore reverse the district court's ruling and remand for the district court to dismiss Cisneros's complaint with prejudice.

## III.    Other Issues

¶ 39    Our determination that the complaint must be dismissed with prejudice obviates the need for us to address the parties' remaining arguments.

## IV.    Conclusion

¶ 40    The order denying Elder's motion to dismiss is reversed, and this case is remanded to the district court for the court to dismiss Cisneros's complaint with prejudice.

JUDGE JOHNSON specially concurs.

JUDGE RICHMAN dissents.

16

JUDGE JOHNSON, specially concurring.

¶ 41 I agree with the majority that the Colorado Governmental Immunity Act (CGIA) only waives immunity for acts that occur in the course of operating a jail if the pretrial detainee shows "injury due to *negligence*." § 24-10-106(1)(b), (1.5)(b), C.R.S. 2020 (emphasis added). As a result, the district court erred when it denied the sheriff's motion to dismiss, as his conduct was *intentional*. The sheriff intentionally promulgated a policy and intentionally implemented a practice where he continued to hold detainees following lawful authority (i.e., when bond was posted) at the request of the Immigration and Customs Enforcement (ICE), under what are known as ICE holds. But because Judge Terry's opinion in my view unnecessarily relies on legislative history to bolster its analysis, I specially concur.

¶ 42 "If courts can give effect to the ordinary meaning of words used by the [General Assembly], the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said." *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000). The majority correctly concludes,

17

based on the plain language of section 24-10-106(1.5)(b), that "'[n]egligence' means negligence; it does not mean intentional conduct." *Supra* ¶ 4.

¶ 43 The concept of negligence governing CGIA claims is hardly groundbreaking; indeed, the purpose of the CGIA is not only to limit the state from unlimited legal liability, but also to "'allow the common law of negligence to operate against governmental entities except to the extent it has barred suit against them.'" *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001) (quoting *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998)). Therefore, while the General Assembly may certainly choose to make negligent conduct committed by individuals who operate a jail the "floor" and intentional conduct the "ceiling," the plain language limiting waiver of immunity to injuries "due to negligence" in section 24-10-106(1.5)(b) gives no room for such an interpretation. *See Humane Soc'y of Pikes Peak Region v. Indus. Claim App. Off.*, 26 P.3d 546, 548 (Colo. App. 2001) ("[I]f our interpretation of the clear language used in the statute does not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it.").

¶ 44    When a statute's interpretation may be discerned from the plain language, as here, there is no need to resort to what are referred to as the canons of statutory construction.  Those canons include looking at the statute's context, prior law, the consequences of a given construction, the goal of the statutory scheme, or as the majority did here, the legislative history.  *Hotsenpiller v. Morris*, 2017 COA 95, ¶ 19; *see also* § 2-4-203(1)(a), (c), (e), (g), C.R.S. 2020.

¶ 45    Judge Terry's opinion relies on *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929), to justify analyzing the legislative history because "the reasons for and the significant circumstances leading up to the enactment [of a law] may be noticed in confirmation of the meaning conveyed by the words used."  *Supra* ¶ 16.  *Missouri Pacific Railroad*, based on my research, has not been cited by another Colorado appellate court until now.  Using legislative history in this manner is contrary to the rule that we must give effect to the plain language of a statute, giving words their plain and ordinary meanings.  *See Roup v. Com. Rsch., LLC*, 2015 CO 38, ¶ 8.

¶ 46 Even assuming use of legislative history for this purpose is appropriate, in this circumstance it invites confusion more than it confirms the conclusion of Judge Terry's opinion. After selective use of the legislative history by Judge Terry's opinion, the dissent responds in kind. On the one hand, Judge Terry's opinion points to legislative history to posit that the General Assembly was not necessarily concerned about the intentional acts of jailers, as such wrongful conduct could be vindicated in a civil rights lawsuit. *Supra* Part II.C.3 (majority opinion). On the other hand, the dissent points to statements in which legislators use negligence to set a "minimal" standard, but say that if a person could show injury caused by something greater, like gross negligence, those injuries would also be encompassed in the waiver of immunity under section 24-10-106(1.5)(b). *Infra* Part II (Richman, J., dissenting).

¶ 47 Highlighting the differing views in which the legislative history is used should not be read to imply that this interpretative aid cannot, in appropriate circumstances, be effective in discerning legislative intent. But I reject the notion that consideration of

legislative history is needed in this case to reach the majority's plain language conclusion.

¶ 48    For similar reasons, I disagree with the dissent's use of legislative history because section 24-10-106(1.5)(b) is not ambiguous or in conflict with another provision.

¶ 49    The dissent's position is that the "literal" interpretation of section 24-10-106(1.5)(b) leads to an absurd result.  Specifically, an injured party may sue for a jailer's negligent conduct, but for intentional conduct a lawsuit is barred.  As a result, the dissent resorts to the use of legislative history to discern that the General Assembly could not possibly have meant what the words plainly state.  But the dissent's interpretation requires adding words to the provision, such as injury "due to *at least* negligence" or injury "due to *at minimum* negligence."  Even broadly interpreting the waiver provisions in the CGIA, as we are directed to do, *see Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 11, the conclusion reached by the dissent is not possible without changing the legislation.  And we do not add language to legislative enactments.  *Smokebrush Found. v. City of Colorado Springs*, 2018 CO 10, ¶ 18.

21

¶ 50    Likewise, while we strive to avoid absurd results in giving a

statute effect, waiving immunity contrary to the plain language is a

policy decision better left to the General Assembly, and it is not for

the court to impose its prerogative. *Bermel v. BlueRadios, Inc.*,

2019 CO 31, ¶ 37 (courts cannot substitute their policy judgments

for those of the General Assembly).[1]

¶ 51    Because Judge Terry's opinion looks at the legislative history

of section 24-10-106(1.5)(b), instead of limiting its analysis to the

plain language of the statute, I specially concur in the judgment.

---

[1] Instead of amending the CGIA to ensure intentional conduct was
covered for individuals operating jails, in 2019 the General
Assembly introduced HB 19-1124, which Governor Jared Polis
signed into law. That law now expressly prohibits Colorado law
enforcement officials from detaining inmates on ICE hold requests
or administrative warrants. *See* § 24-76.6-102(2), C.R.S. 2020.

JUDGE RICHMAN, dissenting.

¶ 52    The majority reverses the district court's order denying defendant's motion to dismiss under the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 to -120, C.R.S. 2020, by concluding that section 24-10-106(1.5)(b), C.R.S. 2020, of the CGIA waives immunity for injuries resulting from the operation of a jail only when the claimant alleges a form of negligence, and not an intentional tort.  Because I disagree with the majority's construction of the statute, I respectfully dissent.

¶ 53    Section 24-10-106 provides, as relevant here:

> (1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section.  Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> . . . .
>
> (b) The operation of any . . . correctional facility, as defined in section 17-1-102, C.R.S., or jail by such public entity;
>
> . . . .
>
> (e) A dangerous condition of any . . . jail . . . .

23

. . . .

> (1.5)(a) The waiver of sovereign immunity created in paragraphs (b) and (e) of subsection (1) of this section does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section.

> (b) The waiver of sovereign immunity created in paragraphs (b) and (e) of subsection (1) of this section does apply to claimants who are incarcerated but not yet convicted of the crime for which such claimants are being incarcerated if such claimants can show injury due to negligence.

¶ 54    Defendant does not dispute that plaintiff's claim for wrongful imprisonment is a tort claim. He argues that plaintiff's injuries did not arise from the operation of a jail or from acts of negligence, and that plaintiff, at most, has a civil rights claim that is not available against him under applicable federal law. The district court rejected each of these arguments. The majority does not reach the several rulings of the district court. Instead, the majority reverses the district court by simply concluding that section 24-10-

106(1.5)(b) waives immunity in an action for injuries resulting from the operation of a jail *only* for claims of negligence.

¶ 55    I disagree with this interpretation of the statute because it is not supported by the plain language of the statute read as a whole, or by the purpose of the CGIA.  In interpreting a statute, courts "endeavor to effectuate the purpose of the legislative scheme[,] . . . we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would . . . lead to illogical or absurd results." *McCoy v. People*, 2019 CO 44, ¶ 38.

## I. Plain Language

¶ 56    The CGIA is intended to counteract inequitable effects of the doctrine of sovereign immunity by defining the circumstances under which the government may be liable.  *See* § 24-10-102, C.R.S. 2020 (the declaration of policy); *see also Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 13 (noting that permitting parties to seek redress for injuries caused by a public entity is a basic purpose of the CGIA).  Because governmental immunity under the CGIA is in derogation of common law, Colorado courts narrowly construe the

CGIA's immunity provisions and broadly construe its waiver provisions. *Daniel*, ¶ 13. Broadly construing the CGIA's waiver provisions permits parties to seek redress for injuries caused by a public entity, "one of the basic but often overlooked" purposes of the CGIA. *Id.* (quoting *State v. Moldovan*, 842 P.2d 220, 222 (Colo. 1992)).

¶ 57     This case requires us to construe the CGIA's waiver of immunity for the operation of a jail, a waiver contained in section 24-10-106.

¶ 58     Section 24-10-106(1)(b) waives sovereign immunity for claims which lie in tort for injuries resulting from the operation of a jail by a public entity. That waiver does not differentiate between injuries caused by intentional torts and unintentional torts. Section 24-10-106(1.5)(a) then restores the immunity against claimants who are incarcerated in a jail pursuant to a conviction, with no differentiation between claimants alleging intentional as opposed to unintentional torts. The following section — section 24-10-106(1.5)(b) — does not similarly restore immunity against claimants who are incarcerated but not yet convicted. Instead, it affirms that

26

the waiver of immunity in section 24-10-106(1)(b) still applies to those claimants.

¶ 59     Although the last clause of that section provides "if such claimants can show injury due to negligence," I do not agree with the majority that this clause limits the waiver of governmental immunity only to negligence claims, for four reasons.

¶ 60     First, the majority's interpretation, although literal, is illogical in the context of the legislative scheme and the purpose of the CGIA waivers of immunity.  Permitting parties to seek redress for injuries caused by a public entity is a basic purpose of the CGIA.  *Daniel*, ¶ 13; *see* § 24-10-102.  The purpose of the relevant section is to waive immunity for injuries resulting from the operation of a jail. *See* § 24-10-106(1)(b).  To conclude that there is a waiver for the negligent operation of a jail, but not for the commission of an intentional tort by the jailer, turns the purpose of the statute, and the purpose of immunity waivers in general, on its head.  We do not interpret statutes in a manner that leads to illogical or absurd results.  *See State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000); *see also*

27

§ 2-4-201(1)(c), C.R.S. 2020 ("A just and reasonable result is intended . . . .").

¶ 61    Second, the conclusion that "negligence" is intended as a minimal standard in section 24-10-106(1)(b) is bolstered by the use of that standard in other provisions of the CGIA. I read sections 24-10-106(4) and 24-10-106.3(8), C.R.S. 2020 — specifying that there is no waiver for strict liability, and that a showing of negligence is required to establish a waiver — to mean that negligence is a minimum to establish a waiver of immunity. This interpretation is also consistent with the overall CGIA scheme of waiving immunity when the government engages in more culpable actions. "The law of torts recognizes that a defendant who intentionally causes harm has greater culpability than one who negligently does so." *Moore v. W. Forge Corp.*, 192 P.3d 427, 441 (Colo. App. 2007) (quoting *Mayer v. Town of Hampton*, 497 A.2d 1206, 1209 (N.H. 1985)); *see also People v. Rigsby*, 2020 CO 74, ¶ 21 (observing a hierarchy of culpable mental states for criminal behavior in which "intentionally" is the most culpable and "criminal negligence" is the least culpable).

28

¶ 62   In line with this hierarchy of culpability, CGIA sections 24-10-106(4) and 24-10-106.3(8) waive immunity for the more culpable negligence, but not for the less culpable strict liability; and CGIA sections 24-10-105(1), 24-10-106.3(4), and 24-10-118(1), C.R.S. 2020, waive immunity for public employee conduct that was the more culpable willful or wanton, but not for the less culpable negligence.  The CGIA must be read "as a whole, giving consistent, harmonious, and sensible effect to all of its parts." *McCoy*, ¶ 38.

¶ 63   Third, Colorado courts have consistently rejected strict constructions of CGIA waivers where such constructions would improperly vitiate the practical operation of those waivers.  *Daniel*, ¶ 21.

¶ 64   And finally, although we must give effect to the statute's plain and ordinary meaning, the intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result.  *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).

¶ 65   I note that defendant, apparently acknowledging the illogical application of limiting this provision to claims of negligence,

concedes for purposes of argument that the waiver of immunity would apply to "intentional torts that involve personal injury, such as assault or battery resulting in physical injury," but not to claims that raise "civil rights concerns." Yet defendant does not offer a principled reason to differentiate between physical injury and wrongful imprisonment, which could also result in physical, economic, and emotional injury. Moreover, neither the majority nor defendant points to any authority holding that any waiver of immunity under the CGIA does not apply to intentional torts.

## II. Legislative History

¶ 66    Assuming a conflict between the initial provisions of the statute waiving immunity for all injuries resulting from the operation of a jail and the last clause of subsection (1.5)(b) referring to negligence, this conflict creates an uncertainty or ambiguity as to the legislative intent. Judge Terry's opinion rejects an ambiguity in the language, yet it examines the legislative history of section 24-10-106(1.5)(b). Because, as suggested by Judge Terry's opinion, courts may notice the circumstances leading up to the enactment of a law to confirm the meaning conveyed by the words used, I agree

30

that we should look at the legislative history.  The parties' briefs both present their respective views of the legislative history.

¶ 67     However, contrary to the conclusions of Judge Terry's opinion, I read the legislative history of section 24-10-106(1.5)(b) to support my interpretation that the legislature intended to waive immunity not just for negligence claims, but also for more serious torts including gross negligence and intentional torts.

¶ 68     Judge Terry's opinion's recitation of the chronology of House Bill 94-1284's journey is accurate, to a point.  The most significant fact is that in May 1994, the language of the proposed amendment to the statute read "only if the person [could] show injury due to negligence," but in the final version, the word "only" was deleted. *See* H.B. 94-1284, 59th Gen. Assemb., 2d Reg. Sess. (Colo. 1994) (as revised, May 9, 1994); H.B. 94-1284, 59th Gen. Assemb., 2d Reg. Sess. (Colo. 1994) (as re-revised, May 10, 1994).

¶ 69     In discussing this revision, Senator Jim Rizzuto asked whether the provision would apply to "anything greater than mere negligence," such as "gross negligence or intentional actions," noting that "I'd hate to have some person . . . in some jail or some

31

Department of Corrections saying 'No, it wasn't negligence.  We meant to beat him up.'"  3d Reading on H.B. 1284 before the S., 59th Gen. Assemb., 2d Reg. Sess. (May 10, 1994).  Senator Dick Mutzebaugh, the Senate sponsor, explained that he intended to address a court decision holding a jail "administratively responsible" for a person "just because he's incarcerated."  *Id.*  He wanted to impose a "very minimal standard" for the claimant to "show some negligence" before the government could be liable.  *Id.*  He elaborated that "gross negligence would have been a higher standard than I . . . particularly wanted."  *Id.*  Another senator then asked the sponsor if his intent as sponsor, and the Senate's intent, was to require "a mere minimum of negligence, that's enough, but that if somebody claims that it was more than that, then that doesn't become a defense for the sovereign immunity to apply."  *Id.*  The sponsor replied, "If, for instance, the claimant can show gross negligence, then he would have right to pursue his action under this bill."  *Id.*  The bill then passed the Senate by a 22-12 majority.  *Id.*

¶ 70     Judge Terry's opinion points to a statement from a sponsor in the House who stated, with respect to H.B. 94-1284, that "malicious conduct" would be dealt with via a federal civil rights claim and would not implicate the proposed legislation. But that comment was made in February 1994, well before the above colloquy in the Senate and the amendment to the proposed subsection.

¶ 71     Plaintiff contends, and I agree, that the May 10 colloquy between the Senate sponsor and voting senators shows that the General Assembly sought to avoid strict liability for operations of a jail or correctional facility, and intended to set a minimum showing for liability by requiring that a facility was at least negligent toward incarcerated persons not yet convicted. Nothing in this discussion suggests that the legislature intended the waiver of immunity to be limited to cases of negligence, and not applicable to more serious torts such as gross negligence or intentional conduct.

¶ 72     When a person operating a jail acts with wrongful intent, the person also acts at least negligently by unreasonably neglecting the rights of the injured claimant. "[P]roving a culpable mental state

33

necessarily establishes any lesser culpable mental state(s)." *People v. Struckmeyer*, 2020 CO 76, ¶ 6.

¶ 73     The majority correctly states that negligence and intentional torts are two different things, and there are different levels of negligence, citing *White v. Hansen*, 837 P.2d 1229 (Colo. 1992). But, as the majority acknowledges, those statements in *White* were made in the context of determining whether a party's negligence could be so aggravated as to amount to all but intentional conduct. They were not made in a context asking whether established intentional conduct encompasses negligence.

¶ 74     And while the majority points to a definition of "negligence" from Black's Law Dictionary, it fails to note that immediately after the listing, Black's inserts the following quote from *The Enforcement of Morals* 36 (1968), by Patrick Devlin: "Negligence in law ranges from inadvertence that is hardly more than accidental to sinful disregard of the safety of others." And Black's immediately defines additional types of negligence, including gross negligence and willful and wanton negligence, as "a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to

34

another." Thus, negligence in the law is not so simply limited as the majority would have us believe from the dictionary definition.

¶ 75    For these reasons, I would affirm the district court's ruling that the CGIA does not provide immunity for defendant against the wrongful imprisonment claim pleaded by plaintiff. The district court correctly concluded the claim arises from the operation of a jail, that plaintiff was incarcerated but not yet convicted of a crime, and that the availability of a civil rights claim does not bar plaintiff's state law tort claim.