Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 21, 2022

**2022 CO 13**

**No. 21SC6, *Cisneros v. Elder*—Colorado Governmental Immunity Act—
Waivers of Sovereign Immunity—Intentional Torts.**

In this case, the supreme court considers whether section 24-10-106(1.5)(b),
C.R.S. (2021), of the Colorado Governmental Immunity Act ("CGIA") waives
sovereign immunity for intentional torts that result from the operation of a jail for
claimants who are incarcerated but not convicted.

The court now concludes that section 24-10-106(1.5)(b) waives immunity
both for intentional torts and for acts of negligence resulting from the operation of
a jail for claimants who are incarcerated but not convicted. In reaching this
determination, the court concludes that the statutory language waiving immunity
for claimants who "are incarcerated but not yet convicted" and who "can show
injury due to negligence" sets a floor, not a ceiling.

Accordingly, the court reverses the judgment of the division below and
remands for further proceedings consistent with this opinion.

**2022 CO 13**

**Supreme Court Case No. 21SC6**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA546

**Petitioner:**

Saul Cisneros,

v.

**Respondent:**

Bill Elder, in his official capacity as Sheriff of El Paso County, Colorado.

**Judgment Reversed**
*en banc*
March 21, 2022

**Attorneys for Petitioner:**
Holland & Hart LLP
Stephen G. Masciocchi
        *Denver, Colorado*

American Civil Liberties Union Foundation of Colorado
Mark Silverstein
Arielle Herzberg
        *Denver, Colorado*

**Attorneys for Respondent:**
Office of the County Attorney of El Paso County, Colorado
Mary Margaret Ritchie, Assistant County Attorney
        *Colorado Springs, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE HART, JUSTICE SAMOUR,** and **JUSTICE BERKENKOTTER** joined.

2

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1    We granted certiorari to consider whether the division below erred in concluding that section 24-10-106(1.5)(b), C.R.S. (2021), of the Colorado Governmental Immunity Act ("CGIA") does not waive sovereign immunity for intentional torts that result from the operation of a jail for claimants who are incarcerated but not convicted.

¶2    We now conclude that section 24-10-106(1.5)(b) waives immunity for such intentional torts.  In reaching this determination, we conclude that the statutory language waiving immunity for "claimants who are incarcerated but not yet convicted" and who "can show injury due to negligence" sets a floor, not a ceiling. To hold otherwise would mean that a pre-conviction claimant could recover for injuries resulting from the negligent operation of a jail but not for injuries resulting from the intentionally tortious operation of the same jail, an absurd result that we cannot countenance.

¶3    Accordingly, we reverse the judgment of the division below and remand for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

¶4    In November 2017, Saul Cisneros was charged with two misdemeanor offenses and jailed in the El Paso County Criminal Justice Center (the "jail").  The court set Cisneros's bond at $2,000, and Cisneros's daughter posted that bond four

3

days later, but the El Paso County Sheriff's Office did not release Cisneros. Instead, pursuant to Sheriff Bill Elder's policies and practices, the Sheriff's Office notified U.S. Immigration and Customs Enforcement ("ICE") that the jail had been asked to release Cisneros on bond. ICE then sent the jail a detainer and administrative warrant, requesting that the jail continue to detain Cisneros because ICE suspected that he was removable from the United States.

¶5 Pursuant to Sheriff Elder's policies and practices, the Sheriff's Office complied with ICE's request, placed Cisneros on an indefinite "ICE hold," and continued to detain him. The jail subsequently advised Cisneros's daughter that the Sheriff's Office would not release her father due to the ICE hold, and she ultimately recovered the bond money that she had posted.

¶6 During his detention, Cisneros, along with another pretrial detainee, initiated a class action in state court against Sheriff Elder, in his official capacity, for declaratory, injunctive, and mandamus relief. Their complaint alleged that Sheriff Elder did not have the authority under state law to continue to hold pretrial detainees in custody when Colorado law required their release, nor did he have the authority to deprive persons of their liberty based on suspicion of civil violations of federal immigration law. Cisneros also asserted a tort claim against Sheriff Elder, seeking damages for false imprisonment, but he subsequently filed an amended complaint in which he did not reassert that claim, stating that he

4

intended to file the requisite notice of such a claim under the CGIA and to reassert that claim at the proper time. Cisneros and Sheriff Elder later agreed, however, that, in order to allow the class action lawsuit to proceed without undue delay, Cisneros would not reassert his tort claim in the class action lawsuit and Sheriff Elder would not assert claim or issue preclusion as a defense in any future lawsuit brought by Cisneros asserting that claim.

¶7    In March 2018, the El Paso County District Court issued a preliminary injunction enjoining Sheriff Elder from relying on ICE immigration detainers or administrative warrants as grounds for refusing to release pretrial detainees from custody when they post bond, complete their sentences, or otherwise resolve their criminal cases. The court thus ordered Sheriff Elder to release Cisneros and his co-plaintiff, pending resolution of their criminal cases, if they posted bond. Cisneros's daughter did so again for her father, and Cisneros was released from custody, nearly four months after his initial detention.

¶8    Thereafter, Cisneros and his co-plaintiff moved for summary judgment, asking the district court to grant mandamus relief, declare that Sheriff Elder's challenged policies violate the Colorado Constitution, and enter a permanent injunction prohibiting those practices. The court granted this motion and entered a judgment declaring that Sheriff Elder had exceeded his authority under Colorado law and violated the Colorado Constitution by relying on ICE detainers

5

or administrative warrants as grounds for refusing to release prisoners who post bond, complete their sentences, or otherwise resolve their criminal cases.

¶9 Sheriff Elder then appealed. While his appeal was pending, however, the legislature enacted and Governor Polis signed into law House Bill 19-1124, now codified at sections 24-76.6-101 to -103, C.R.S. (2021). This law expressly prohibits state law enforcement officers from detaining inmates based on civil immigration detainer requests. *See* § 24-76.6-102(2), C.R.S. (2021). The court of appeals division considering Sheriff Elder's appeal then concluded that this intervening legislation mooted the appeal, and the division therefore dismissed it. *Cisneros v. Elder*, No. 19CA0136, ¶ 3 (Sept. 3, 2020).

¶10 Cisneros then filed the instant action against Sheriff Elder, in his official capacity, alleging that Cisneros's pretrial detainment constituted false imprisonment and seeking damages. Sheriff Elder responded by moving to dismiss the complaint under C.R.C.P. 12(b)(1), asserting that the CGIA immunized him from liability.

¶11 The district court ultimately denied Sheriff Elder's motion, concluding that Cisneros's claim of false imprisonment falls within the CGIA's waiver of immunity for injuries resulting from the operation of a jail under section 24-10-106(1.5)(b), which allows claims asserted by claimants who are "incarcerated but not yet convicted" if such claimants "can show injury due to negligence." In so

6

concluding, the district court rejected Sheriff Elder's contentions that Cisneros's alleged injuries did not result from the operation of a jail because, in the court's view, "the Sheriff's determination of whether or not to release an inmate lies at the very heart of the Sheriff's duties and is intimately related to the purpose and operation of the Jail." In addition, construing the waiver of immunity broadly and seeking to avoid an absurd result, the court determined that the statutory requirement that a pre-conviction claimant show "injury due to negligence" is satisfied not only if the claimant suffers an injury due to negligence, but also "for injuries due to anything greater than negligence, including both gross negligence and intentional actions." To find otherwise, the court opined, "would be to apply a narrow, rather than a broad, construction of this ambiguous waiver provision, and it would lead to the absurd result that a detainee could sue for negligent actions committed in a jail but not for intentional torts." The court concluded, "Such a result would not be just and reasonable, nor would it effect the purposes of the CGIA."

¶12     Pursuant to section 24-10-108, C.R.S. (2021), Sheriff Elder then filed an interlocutory appeal, arguing, among other things, that the district court had erred in ruling that the CGIA's waiver of governmental immunity under section 24-10-106(1.5)(b) extends to injuries caused by intentional torts.

7

¶13    In a split, published decision, another division of the court of appeals reversed the district court's order, agreeing with Sheriff Elder that the waiver of governmental immunity in section 24-10-106(1.5)(b) applies only to negligent conduct that results in injury and does not provide a remedy for intentional misconduct. *Cisneros v. Elder*, 2020 COA 163M, ¶¶ 4, 39–40, 490 P.3d 985, 986, 990. In the majority's view, "'[N]egligence' means negligence; it does not mean intentional conduct." *Id.* at ¶ 4, 490 P.3d at 986. Thus, the waiver of sovereign immunity under section 24-10-106(1.5)(b), which references only "injury due to negligence," must be read as applying only to injuries caused by negligence, and not to those caused by intentional torts. *Id.* at ¶¶ 19–20, 490 P.3d at 988. The majority was not persuaded otherwise by Cisneros's argument that because intentional acts subsume negligent ones, the waiver provision must extend to intentional torts. *Id.* at ¶¶ 24–26, 490 P.3d at 988–89. According to the majority, under settled Colorado law, negligence and intentional torts are distinct, and, by definition, negligence does not include intentional acts. *Id.* at ¶¶ 25–26, 490 P.3d at 988–89.

¶14    Writing only for herself, Judge Terry, who authored the majority opinion, went on to review, "for the sake of completeness," the legislative history, which she concluded reinforced the majority's reading of section 24-10-106(1.5)(b). *Id.* at ¶¶ 28, 37, 490 P.3d at 989–90. In Judge Terry's view, the legislative hearings on

8

section 24-10-106(1.5)(b) demonstrated that the legislature had introduced this provision in response to concerns about inmates bringing frivolous negligence claims against jails and correctional facilities, and intentional torts were not part of the legislature's motivation. *Id.* at ¶¶ 31–32, 490 P.3d at 989–90. Judge Terry further believed that statements made by the bill's sponsors suggested their understanding that the law would not cover intentional acts. *Id.* at ¶¶ 33–37, 490 P.3d at 990.

¶15 Judge Johnson specially concurred. In her view, because the language of section 24-10-106(1.5)(b) unambiguously limits its waiver of governmental immunity to cases in which a pretrial detainee can show injury due to negligence, Judge Terry's reliance on legislative history to bolster her analysis was unnecessary. *Id.* at ¶¶ 43–47, 490 P.3d at 991 (Johnson, J., specially concurring).

¶16 Judge Richman dissented, opining that the majority's interpretation of section 24-10-106(1.5)(b) was "not supported by the plain language of the statute read as a whole, or by the purpose of the CGIA." *Id.* at ¶ 57, 490 P.3d at 993 (Richman, J., dissenting). In Judge Richman's view, reading section 24-10-106(1.5)(b) as waiving immunity for the negligent operation of a jail but not for the commission of an intentional tort by the jailer is "illogical" and turns the CGIA provision's purpose, which is to waive immunity for injuries resulting from the operation of a jail, on its head. *Id.* at ¶ 62, 490 P.3d at 993. In addition, relying

9

on other CGIA provisions, Judge Richman reasoned that negligence was intended as a "minimal" standard under the statute (i.e., as a floor and not a ceiling). *Id.* at ¶¶ 63–64, 490 P.3d at 994. Judge Richman further observed that Colorado courts have consistently rejected strict constructions of CGIA waivers when such constructions "would improperly vitiate the practical operation of those waivers." *Id.* at ¶ 65, 490 P.3d at 994 (citing *Daniel v. City of Colo. Springs*, 2014 CO 34, ¶ 21, 327 P.3d 891, 897). And Judge Richman pointed out that when a literal interpretation of a statute leads to an absurd result, which he believed the majority's reading of section 24-10-106(1.5)(b) did, the legislature's intent must prevail. *Id.* at ¶ 66, 490 P.3d at 994 (citing *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998)).

¶17   Even if the statute's language could be said to be ambiguous, however, Judge Richman still disagreed with the majority's conclusion because, in his view, section 24-10-106(1.5)(b)'s legislative history revealed a legislative intent to waive immunity not only for negligence claims, but also for "more serious" torts, including gross negligence and intentional torts. *Id.* at ¶¶ 68–69, 490 P.3d at 994. In support of this conclusion, Judge Richman noted that (1) a previous version of the applicable legislation read "only if the person [could] show injury due to negligence," but in the final version, the word "only" was deleted; and (2) comments by the bill's sponsor indicated that the legislature's principal

motivation was to preclude strict liability for injuries resulting from jail operations by requiring a minimum showing of negligence in order for the waiver of immunity to apply. *Id.* at ¶¶ 70–73, 490 P.3d at 994–95 (alteration in original).

¶18 Cisneros petitioned this court for a writ of certiorari, and we granted his petition.

## II. Analysis

¶19 We begin by addressing our standard of review and the applicable principles of statutory construction. Next, we discuss the CGIA generally and section 24-10-106(1.5)(b)'s waiver of governmental immunity for injuries resulting from the operation of a jail and suffered by claimants who are "incarcerated but not yet convicted." Last, we apply these principles to the matter before us and conclude that section 24-10-106(1.5)(b) waives immunity for intentional torts resulting from the operation of a jail for such claimants.

### A. Standard of Review and Principles of Statutory Construction

¶20 Governmental immunity implicates issues of subject matter jurisdiction, which we determine in accordance with C.R.C.P. 12(b)(1). *Daniel*, ¶ 10, 327 P.3d at 894. When, as here, the pertinent facts underlying a trial court's jurisdictional findings are undisputed and the issue presents a question of law, then our review is de novo. *Id.*

¶21 We likewise review questions of statutory construction de novo. *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 14, 480 P.3d 1286, 1289. In construing a statute, we aim to effectuate the legislature's intent. *Id.* To do so, "we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we construe words and phrases in accordance with their plain and ordinary meanings." *Id.* If the statutory language is clear and unambiguous, then we do not resort to other rules of statutory construction. *Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12, 410 P.3d 1249, 1252. We presume, however, that the General Assembly intends a just and reasonable result. *City & Cnty. of Denver Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 2017 CO 30, ¶ 11, 407 P.3d 1220, 1223. Accordingly, "although we must give effect to the statute's plain and ordinary meaning, the intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result." *AviComm*, 955 P.2d at 1031 (citation omitted).

## B. The CGIA

¶22 In general, the CGIA serves to shield public entities from tort liability. *Daniel*, ¶ 13, 327 P.3d at 895. Thus, section 24-10-108 states:

> Except as provided in sections 24-10-104 to 24-10-106 and 24-10-106.3, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

12

¶23 The legislature has, however, established a number of waivers of sovereign immunity that, when applicable, render public entities subject to tort liability in the same manner as if they were private persons. *See* §§ 24-10-106 to -107, C.R.S. (2021).

¶24 Pertinent here, section 24-10-106(1)(b) waives a public entity's sovereign immunity for injuries resulting from that entity's operation of any correctional facility or jail. This waiver does not apply, however, to "claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction." § 24-10-106(1.5)(a). In contrast, the waiver does apply to claimants who are "incarcerated but not yet convicted" of a crime "if such claimants can show injury due to negligence." § 24-10-106(1.5)(b).

¶25 "Because governmental immunity under the CGIA is in derogation of Colorado's common law, we narrowly construe the CGIA's immunity provisions, and as a logical corollary, we broadly construe the CGIA's waiver provisions." *Daniel*, ¶ 13, 327 P.3d at 895. Broadly construing the CGIA's waivers of sovereign immunity allows individuals to seek redress for injuries caused by public entities, which is "one of the basic but often overlooked" purposes of the CGIA. *Id.* (quoting *State v. Moldovan*, 842 P.2d 220, 222 (Colo. 1992)).

## C. Application

¶26    Turning to the question before us, we will assume without deciding that section 24-10-106(1.5)(b) plainly and unambiguously waives immunity as to claimants who are incarcerated but not convicted for injuries resulting from the operation of a jail, but only if they can establish claims for negligence.

¶27    Assuming such a literal interpretation, however, we initially conclude that such a construction would lead to absurd results. Under this interpretation, a pretrial detainee could recover damages for injuries caused by the negligent operation of a jail but not for injuries caused by the intentionally tortious operation of the same jail. As a result, defendants sued for injuries resulting from the operation of a jail could successfully defend against liability by claiming that they did not *accidentally* cause the plaintiff injury but rather they *meant* to harm the plaintiff. In our view, such a result would be absurd. *See Absurd*, Webster's Third New International Dictionary (2002) (defining "absurd" as "marked by an obvious lack of reason, common sense, proportion, or accord with accepted ideas : ridiculously unreasonable, unsound, or incongruous"). Indeed, no party has offered a reasonable basis for allowing such a result, and we can conceive of none.

¶28    Because a literal interpretation of section 24-10-106(1.5)(b) would lead to an absurd result, we therefore may look to the legislature's intent in construing that provision. *See AviComm*, 955 P.2d at 1031.

14

¶29 In seeking to discern the legislature's intent, we initially acknowledge that the parties each find statements in the legislative history that they believe support their respective arguments. We, however, need not wade deeply into that debate. Rather, it suffices for us to observe that the principal concern motivating the enactment of section 24-10-106(1.5)(b) was to ensure that correctional facilities and jails would not be held strictly liable for injuries incurred by pre-conviction incarcerated claimants. *See, e.g.*, Hearing on H.B. 1284 before the S., 59th Gen. Assemb., 2d Reg. Sess. (May 9, 1994) (statement of Sen. Mutzebaugh, Senate sponsor of H.B. 1284) (clarifying that under the proposed amendment, a claimant "at least has to allege some sort of negligence on the part of the jail or correctional facility" to prevail, a requirement that was deemed necessary to avoid the "absolute responsibility" for inmate injuries that courts had imposed on counties and to counter the argument that counties should be liable based solely on the existence of an alleged "special relationship" between inmates and the counties that were detaining them); Hearing on H.B. 1284 before the S., 59th Gen. Assemb., 2d Reg. Sess. (May 10, 1994) (statement of Sen. Mutzebaugh, Senate sponsor of H.B. 1284) ("What I intended here was we have a court decision that that [sic] has kind of said you don't have to be negligent. That [jailers] are administratively responsible for that person just because he's incarcerated. And what I want to do is put a very minimal standard on the part of those people who are incarcerated,

15

but not convicted, to show some negligence and gross negligence would have been a higher standard than I, than I particularly wanted, but I want to show some negligence on the part of the operation of that facility before they can recover. So this is to set a minimum kind of standard that someone has to meet before they can pursue their claim against the county or the state.").

¶30 This overriding purpose, when coupled with the above-noted settled principle that we construe the CGIA's immunity provisions narrowly and waiver provisions broadly, *Daniel*, ¶ 13, 327 P.3d at 895, convinces us that section 24-10-106(1.5)(b)'s requirement that pre-conviction incarcerated claimants must prove "injury due to negligence" was intended as a floor, not a ceiling. Accordingly, we conclude that section 24-10-106(1.5)(b) waives immunity for intentional torts, including false imprisonment, resulting from the operation of a jail for claimants who are incarcerated but not convicted.

¶31 So concluding avoids the absurd result of allowing pre-conviction incarcerated claimants to recover for injuries caused by the negligent operation of a jail but not for those caused by the intentionally tortious operation of that same jail. Moreover, our interpretation serves the CGIA's purpose of allowing parties to seek redress for injuries caused by public entities. *See Daniel*, ¶ 13, 327 P.3d at 895; *Moldovan*, 842 P.2d at 222. And reading section 24-10-106(1.5)(b) to require a claimant to make a minimum showing of negligence ensures that those who

16

operate correctional facilities and jails will not be held strictly liable for any injuries resulting from such operations, a prime purpose of that provision.

¶32 In reaching this determination, we are not persuaded by Sheriff Elder's argument that, as to "more culpable torts," the CGIA waives immunity only for public employees as a matter of personal liability, not for public entities as a matter of governmental liability. The CGIA establishes a regime by which (1) public entities are not liable for actions that lie in tort or could lie in tort unless immunity is waived, *see* §§ 24-10-105(1), -106(1), C.R.S. (2021); and (2) public employees are generally not liable for injuries arising out of acts or omissions occurring during the performance of their duties and within the scope of their employment, unless such acts or omissions were willful and wanton, *see* §§ 24-10-105, -118(2)(a), C.R.S. (2021). The fact that the legislature allowed for individual-capacity actions against public employees in certain circumstances, however, has no bearing on whether a public entity has waived immunity under the CGIA. These are separate and distinct issues, and Sheriff Elder offers no applicable authority to support his view that because the legislature allowed individual-capacity lawsuits against public employees for their willful and wanton conduct, it intended to preserve public entities' immunity from suit arising from their own intentionally tortious misconduct.

17

¶33 The case law and other CGIA provisions on which Sheriff Elder relies do not indicate otherwise. These authorities generally establish that (1) public employees do not enjoy sovereign immunity when sued in their individual capacities for willful and wanton conduct and (2) public entities are not liable for the willful and wanton conduct of their employees. *See, e.g.*, *Middleton v. Hartman*, 45 P.3d 721, 724, 728 (Colo. 2002) (holding that "state employees do not enjoy sovereign immunity when sued in their individual capacities for willful and wanton conduct because, under these circumstances, relief is not sought from the state but only from the employees individually," and opining that "the state is not liable for its employees' willful and wanton conduct"); *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 654 (Colo. App. 2006) (concluding that a sheriff could not be held liable on a respondeat superior theory for the willful and wanton conduct of an employee in circumstances in which sovereign immunity has not been waived); *Ramos v. City of Pueblo*, 28 P.3d 979, 980–81 (Colo. App. 2001) (observing that nothing in the CGIA indicates that a public entity may be liable for the willful and wanton conduct of a public employee); §§ 24-10-110(1)(a), (b)(I), C.R.S. (2021) (providing that a public entity is liable for the costs of defense of, and the payment of all judgments and settlements of claims against, any of its public employees when the claim arises out of injuries sustained from acts or omissions of such

employees occurring during the performance of their duties and within the scope of their employment, except when such acts or omissions are willful and wanton).

¶34 Here, Cisneros has not sued a public employee in his individual capacity for willful and wanton conduct, nor is he seeking to hold a public entity liable for an employee's willful and wanton conduct. Rather, Cisneros has sued Sheriff Elder in his official capacity (based on his policies and practices relating to indefinite ICE holds), and such an action is treated as a suit against the public entity itself. *See Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 32, 285 P.3d 986, 997. Accordingly, this case does not raise a question as to whether Sheriff Elder can be held liable for the willful and wanton conduct of any of his employees, and the authorities on which Sheriff Elder relies are therefore inapposite.

¶35 In so determining, we acknowledge that in *Gray v. University of Colorado Hospital Authority*, 2012 COA 113, ¶ 27, 284 P.3d 191, 196–97, the division concluded that "the CGIA does not provide for the waiver of the sovereign immunity of public entities from suit based either on their own willful and wanton acts or omissions, or their employees' willful and wanton acts or omissions," noting that we had reached the same conclusion in *Middleton*, 45 P.3d at 728. In *Middleton*, however, we did not conclude that a public entity is immune from suit based on its own willful and wanton conduct. Rather, we addressed whether public employees enjoy sovereign immunity when sued in their individual

capacities for willful and wanton conduct. *Middleton*, 45 P.3d at 724 & n.1. To the extent that the division in *Gray* thus misconstrued our holding in *Middleton*, we disavow that portion of the division's opinion.

¶36 Finally, we note that Sheriff Elder argues that Cisneros cannot satisfy a prerequisite for establishing a waiver of immunity because he has shown neither an injury nor that any injury has resulted from the operation of a jail. Sheriff Elder also makes a number of arguments as to why he should prevail on the merits. Sheriff Elder's contentions regarding whether Cisneros suffered an injury resulting from the operation of a jail is not within the question on which we granted certiorari, and we therefore will not address it. *See Bermel v. BlueRadios, Inc.*, 2019 CO 31, ¶ 18 n.4, 440 P.3d 1150, 1154 n.4 (declining to address an issue that was beyond the scope of the question on which this court had granted certiorari). Likewise, Sheriff Elder's arguments on the merits are not properly presented in an interlocutory appeal concerning issues of sovereign immunity. *See Adams ex rel. Adams v. City of Westminster*, 140 P.3d 8, 12 (Colo. App. 2005) ("[I]nterlocutory appeals under § 24-10-108 are limited to determining issues of sovereign immunity. Determining merits-based issues would expand the nature of appellate review beyond that mandated by statute.").

## III. Conclusion

¶37    For the foregoing reasons, we conclude that section 24-10-106(1.5)(b) waives immunity both for intentional torts and for acts of negligence resulting from the operation of a jail for claimants who are incarcerated but not convicted.

¶38    Accordingly, we reverse the judgment of the division below and remand for further proceedings consistent with this opinion.